# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA,**                    NO.: 6:25-CR-55-JSS-DCI

**VS**

**ITALO RAFAEL BRETT BONINI**
_____

**DEFENDANT**

### DEFENDANT'S SENTENCING MEMORANDUM

Defendant Italo Rafael Brett Bonini, through his undersigned attorney, respectfully submits this sentencing memorandum, seeking appropriate punishment that is sufficient but not greater than necessary to serve all purposes of sentencing under 18 U.S.C. 3553 (a)(1)-(7).

### *PROCEDURAL HISTORY*

Mr. Bonini was arrested on February 4, 2025 and subsequently indicted by the grand jury of the Middle District of Florida on February 26, 2025 with a three (3) count Indictment. Count 1-Enticement of a Minor to Engage in Sexual Activity, Count 2-Sexual Exploitation of Children and Count 3-Enticement of a Minor to Engage in Sexual Activity.

Although the matter was continued for purposes to review the discovery in this case, the defendant did not file any pre-trial motions nor did the defendant ever wish to litigate the charges. Mr. Bonini admitted his guilt, signed a plea agreement and entered a plea of guilty to Counts 1 and 2 of the Indictment on May 1, 2025 before the Honorable United States Magistrate Judge Daniel C. Irick. In doing so, he waived his right to appeal his sentence except in very limited circumstances. Mr. Boninis' sentencing is scheduled for October 23, 2025, before this Honorable Court. Mr. Bonini has accepted responsibility for his crimes and stands ready to accept punishment.

### *REQUEST FOR A REASONABLE SENTENCE*

The undersigned requests that this Court impose a downward variance sentence within the sentencing range of 188 months-235 months, which is consistent with the guideline range found at total offense level 36, criminal history I. The sentence would be a downward variance of seven levels from Mr. Boninis' properly calculated guideline range of life imprisonment, found at his current total offense level 43, criminal history I. Said variance would fully take into account Mr. Boninis' self-termination of his criminal conduct in this case, as well as his

complete and total acceptance of responsibility. To be sure, the undersigned understands that an acceptance of responsibility reduction was given to Mr. Bonini pursuant to the analysis and scoring conducted by the Probation Office as part of the guideline calculation. (See PSR p17).

However, had the Defendant taken his case to trial, the CV in this case would have had to testify before a jury of fourteen strangers, as well as other court personnel and court spectators. Additionally, the CV would been subjected to both direct and cross examination by the parties in this case. Given the nature of the charges, this may have been very difficult for the CV,. At the conclusion of the trial, if convicted, Mr. Bonini would be in no different position, under the advisory sentencing guidelines than he is now. He would be scored at a total offense level 43 , criminal history I, for a guideline sentence of life imprisonment.

The undersigned asks this Court to recognize Mr. Boninis' acceptance of responsibility and to sentence him accordingly. Such a sentence would promote respect for the law, would provide just punishment and would protect the public from further crimes of Mr. Bonini. Courts have held that the child-sex offense guidelines can produce "irrationally severe" sentences and justify large downward variances. United States v. Dorvee, 616 F.3d 174 (2d Cir.2010) Moreover, the guidelines do not distinguish serious predators from first-time offenders.

In the current case, Mr. Bonini is a 26 year old man at the time of his sentencing. He has been in custody for nine (9) months. If this Court imposes a sentence of 188 months, Mr. Bonini would not be released from prison until he was 41 years old. If this Court imposes a sentence of 235 months, he would not be released from prison until he was 46 years old. Although Mr. Bonini would be eligible for gain time of his sentence, he would still have to serve at least 85% of that sentence. Mr. Bonini would NOT be eligible for any earned time credits as his conviction on Count 1 would preclude him for being eligible for any of those credits.

Additionally, though he has zero criminal history points, he normally would be eligible for a two-level reduction in his total offense level under the new "zero criminal history points" amendment. However, he is ineligible to receive a reduction pursuant to U.S.S.G. 4C1.1, since this offense is a covered sex offense and thus he is ineligible for a two-level reduction. See U.S.S.G. 4CI (a)(5).

While this Court must correctly calculate the guideline range, Gall v. United States, 552 U.S.38, 49 (2007), it may not treat that range as mandatory or presumptive, Id. At 51, Nelson v. United States, 555 U.S.350, 352 (2009). Rather the Court should treat the guidelines as "one factor among several" to be considered in imposing an appropriate sentence under 3553 (a). Kimbrough v. United States, 552 U.S. 85,90 (2007). The Court must "consider all of the 3553 factors." But what is paramount is that the Court should "make an individualized assessment based on the facts presented," and explain how the facts relate to the purposes of sentencing. Id, at 49-50, 53-60; Pepper v. United States, 131 S.Ct. 1229, 1242-43 (2011).

Ultimately, the Court's "overarching "duty is to "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing. Id at 101; Pepper, 131 S.Ct. at 1242-43. In order to ensure that the guidelines are truly treated as advisory, the Supreme Court has confirmed that the district courts are authorized to disagree with a guideline as a matter of

policy. Because "the guidelines are now advisory...., as a general matter courts may vary from guideline ranges based solely on policy considerations, including disagreements with the guidelines." Kimbrough, 552 U.S.at 101-102, citing Rita v. United States, 551 U.S. 338, 351 (2007) (district courts may find that the "Guidelines sentence itself fails properly to reflect 3553 (a) considerations"). 18 U.S. Code 3553 sets forth factors to be considered in Imposing Sentence in that the Court shall impose a sentence sufficient, but not greater than necessary , to comply with the purposes set forth in paragraph (2) of this subsection. The Court, in determining the particular sentence to be imposed shall consider:

1. Nature and circumstances of the offense and the history and characteristics of the defendant;
2. The need for the sentence imposed;
   (a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (b) To afford adequate deterrence to criminal conduct;
   (c) To protect the public from further crimes of the defendant; and
   (d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.


## *HISTORY OF THE DEFENDANT*

The defendant is a 25 year old man born August 5, 1999 in Caracas, Venezuela, of a Venezuelan father and Italian mother. Mr Bonini came to the United States as a "DACA Dreamer' and is a citizen of Venezuela. He was raised by his parents who are still married and currently reside in Orlando, Florida. Mr. Bonini grew up in the Orlando area, attended Freedom High School, class of 2017, graduated Rollins College, Winter Park, class of 2023, with a Bachelor's degree in music. Prior to his arrest on February 4, 2025, Mr. Bonini was employed as a music teacher at Hunters Creek Middle School. Mr. Bonini is musician, taught private music lessons and was a member of a group of musicians who played at various conventions and events. Mr. Bonini never served in the military, and he never received disability income. Mr. Bonini is single, never married and has no children. Mr. Bonini has been living with his parents his entire life in Hunters Creek. Mr. Bonini has a religious background in the Mormon faith and was a member of the LDS Church and served in their choir.

## *FACTS AND CIRCUMSTANCES OF THE OFFENSE*

The Pre-Sentence Report in this case, as well as the factual basis in the plea agreement, accurately set forth the crimes committed by Mr. Bonini in this case. These crimes are significant, and Mr. Bonini accepts responsibility for committing these crimes. He knows he faces a lengthy term of imprisonment followed by a lengthy term of supervised release. In determining a fair and reasonable sentence, the Court must take into account all of the factors found in 18 U.S.C. 3553. (a)(1)-(7). In making an individualized assessment of Mr. Bonini, the undersigned would ask this court to consider numerous factors set forth below.

### *PERSONAL MITIGATION*

Mr. Bonini has NO prior criminal history nor has he had any prior involvement with the criminal justice system, as a juvenile or an adult. Mr. Bonini has not had any previous sexually related charges and/or allegations of sexual misconduct in any setting, including school, work, or the home. He has never previously been investigated by DCF. Mr. Bonini does not smoke, drink alcohol or partake in any drug consumption. Mr. Bonini has never been hospitalized in a psychiatric facility, nor has he ever been Baker Acted or civilly committed. With respect to his sexual history, Mr. Bonini has never engaged in sex/sexual physical contact, with either men or women. (See Dr. Danzigers report, p.5).

It is important to note that Mr. Bonini was the subject of sexual abuse by a teacher while a student in the first-grade as reported to both Dr. Danziger and Dr. McClain as set forth in their respective reports. (See attached Reports: Dr. Danziger report p. 5, Dr. McClain report, p. 1). The reports indicate that his first grade teacher took him to the bathroom, took down his pants and acted in an inappropriate manner. Mr. Bonini was unable to recall the exact details and/or how many times this occurred, but these actions led him to suffer extreme stress, bouts of crying and eventually being switched to another class for first grade.

### *ACCEPTANCE OF RESPONSIBILITY AND REMORSE*

As previously stated Mr. Bonini accepted responsibility for these criminal charges with a plea entered on May 1, 2025. Mr. Bonini never desired to go to trial, never denied the charges, never attempted to avoid culpability. In fact, when asked by Dr. Danziger about his day of arrest and the charges, Mr. Bonini stated to Dr. Danziger that "I confessed, I felt guilty". (See Dr. Danziger report,p. 6). Mr. Bonini has expressed extreme self-disgust with his actions to both therapists/law enforcement and the undersigned counsel on numerous occasions. **This is evidenced by cooperation to submit to not one but two (2) psychiatric evaluations, enroll and complete several courses while incarcerated as well as prepare a statement of apology for the Court and victims acknowledging the harm he has inflicted. (See attachments herein).**

### *EVIDENCE OF REHABILITATION/LOW RISK OF REOFFENSE*

Dr. Danziger conducted psychological testing which comprised of several tests: Minnesota Multiphasic Personality Inventory, Abel Assessment For Sexual Interest, LOOK Assessment. The results of said tests and his evaluation are set forth in his report. (Attached herein). Dr. Danziger's diagnosis was probable Pedophilic Disorder, panic disorder and adjustment disorder with Mixed Anxious and Depresses Mood. **His report goes on to state that there were no indications that he engaged in any contact sexual offenses and no indications that he ever attempted to actually meet in person with minor children for sexual purposes, despite being in a school setting as a teacher with access to many children.** Dr. Danziger said that would suggest a degree of impulse control. (p.10). The opinion of Dr. Danziger is that

Mr. Bonini is amenable to psychosexual therapy and counseling of an individual and group nature. **Dr. Danziger stated that based upon his testing and the lack of contact with any victims, the defendant, with counseling, psychotherapy and appropriate restrictions and supervision could reside safely within the community. (p. 10).**

Dr. McClain conducted a Forensic Psychological Evaluation on August 26, 2025 wherein the following procedures were administered: clinical interview, review of court documents, review of Dr. Danziger's report, mental health exam, **Sexual Violence Risk Assessment and Static test (test utilized to predict risk of sexual re-offense).** Her summary and recommendation is that Mr. Bonini is at **low risk for re-offense**. Dr. McClain recommends that he participate in mental health treatment and possible medication management to address his mental issues and provide guidance in setting appropriate interpersonal and sexual boundaries. (See p. 3 of said report).

### ***THE NEED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE***

The Pre-Sentence Report in this case, as well as the factual basis in the plea agreement, accurately set forth the crimes committed by Mr. Bonini in this case. These crimes are significant, and Mr. Bonini accepts responsibility for committing these crimes. He knows he faces a lengthy term of imprisonment followed by a lengthy term of supervised release. In determining a fair and reasonable sentence, the Court must take into account all of the factors for deterrence, punishment and rehabilitation, found in 18 U.S.C. 3553 (a)(1)-(7). In addition to the factors set forth above, the undersigned counsel would like this Honorable Court to consider the following factors with respect to a variance for the defendant:

a.  Mr. Bonini voluntarily terminated the criminal activity in this case. Mr. Bonini ceased all communications and/or involvement with the victims before he was aware that he would be charged with said offenses. Mr. Boninis' voluntary termination of these illegal activities indicate awareness and remorse of his behavior.

b.  Mr. Bonini did not screenshot, save and/or post any of his interactions with the victims in the instant case. Mr. Bonini did not produce any of these interactions for public viewing. In many production and enticement cases, a defendant takes the photos of sexual activity and uploads them online for public consumption. In this case, Mr. Bonini was the only party who viewed and/or had access to the interactions with CV-1 and CV-2.

c.  Mr. Bonini voluntarily submitted to a psycho-sexual examination conducted by Dr. Jeffrey Danziger on April 13, 2025. In said report which is attached to the PSR, it states that Mr. Bonini was possibly sexually abused by his first grade teacher on perhaps four (4) occasions, based upon Mr. Boninis' recollection of events which transpired with his first grade teacher. More specifically, Mr. Bonini states that the teacher accompanied him to the bathroom, entered his stall and ordered him to take down his pants. Mr. Bonini stated that based upon

the events that occurred with his first grade teacher, he often wet the bed, refused to go to school and eventually was transferred out of her class into another.

d. Moreover, in said report, Dr. Danziger established that Mr. Bonini had no previous history of criminal conduct, no history of abuse of alcohol, street drugs, or prescription medications and no indications that he suffers from any substance use disorder diagnosis.

e. Dr. Danziger goes on to state that there are NO indications that Mr. Bonini engaged in any CONTACT sexual offenses, despite being in a school setting as a teacher, himself, with access to many children. Dr. Danziger states that this demonstrates a degree of impulse control.

f. Dr. Danziger states that Mr. Bonini would require psychosexual therapy and counseling of an individual and group nature.

g. Mr. Bonini submitted to a second psycho-sexual evaluation conducted by Dr. McClain wherein she conducted an evaluation that specifically measures the risk of re-offense. Dr. McClains' report found that Mr. Bonini was a low risk for re-offense.

h. Mr. Bonini will never teach again and has lost his profession as well as his liberty.

i. Mr. Bonini is also aware that he will most likely be deported for his criminal acts and possibly be deported to Venezuela, a country in which he has never resided.

### ***CONCLUSION***

The advisory guideline range of life imprisonment drastically overstates the seriousness of this offense and the individual characteristics of Mr. Bonini. *Under United States v. Booker, 543 U.S. 220 (2005), and Gall v. United States, 552 U.S. 38 (2007),* the guidelines are advisory. The Court must impose a sentence "sufficient, but not greater than necessary to achieve the purposes of 3553." While the offense is serious, the facts here are markedly less aggravated than those typical 2422 or 2251 cases. There was no physical contact, no production of sexual material. The conduct did not involve organized distribution or coercion. Mr. Bonini did not attempt to conceal or profit from his behavior. *In United States v. Spence, No.17-14976 (11th Cir. May 2,2019),* the Eleventh Circuit affirmed a 68 month downward variance from a 210-262 month range based upon similar mitigating factors: limited sophistication, absence of production, and low risk of recidivism. That same reasoning applies to this case.

Additionally, Mr. Bonini is only 26 years old, has no prior criminal record, and exhibits a high potential for rehabilitation. All psychological evaluations indicate that he is amenable to treatment and demonstrates genuine remorse. Courts have recognized that youth and treatment prospects justify a downward departure variance. In *United States v. Dominguez, No.19-11378 (11th Cir.May 13, 2001),* the Eleventh Circuit upheld a 240 months sentence-well below the advisory range of 360 months to life-where the district court relied on youth, immaturity and potential for rehabilitation. Similarly in United States v. Beaudoin, No.16-12324, (11th Cir. Mar.11, 2016), the Eleventh Circuit affirmed a below guidelines sentence in a 2251 case where the defendants personal characteristics and low risk justified leniency.

A lengthy term of imprisonment approaching life is unnecessary to achieve deterrence or public protection in this case. The empirical evidence cited by the U.S. Sentencing Commission shows that recidivism risk declines sharply with age and is significantly reduced when defendant engage in structured treatment programs (*see U.S. Sentencing Commission, Recidivism of Federal Sex Offenders Released in 2013, 2021*). A lengthy life range sentence would serve only retribution, not rehabilitation or deterrence. A below guidelines sentence combined with sex-offender treatment, supervision and strict release conditions will adequately protect the public.

Comparable defendants in this Circuit have received sentences far below life where no production, contact, distribution, violence have occurred. For example, the defendant in Spence (68 months) and the defendant in Dominguez (240) months, both received substantial variances and those sentences were affirmed. Imposing a life sentence here would create a disparity rather than prevent one.

1. *United States v. Aguayo, D.C. Docket No. 1:12-cr-20577-RSR-1, No. 13-13271 (11th Cir. Apr 21, 2014).* Defendant pled to Enticement of a Minor to Engage in Sexual Activity and received a downward variance. Court sentenced him to 150 months imprisonment noting the defendants' young age, lack of criminal history, promising future, and treatable mental health problems.
2. *United States v. Spence, No.17-14976 (11th Cir. May 2,2019);* defendant convicted of child pornography offenses, guideline range was 210-262 months. District Court imposed downward variance of 68 months stating the defendants' lack of sophistication and no evidence that he was high risk or re-offending children.
3. *United States v. Dominguez, No.19-11378 (11th Cir.May 13, 2001)*, court imposed 240 months, a downward variance from an advisory range of 360 months to life. "The Eleventh Circuit has affirmed below guidelines sentences in 2422 related cases where the district court provides a reasoned 3553 analysis".
4. *United States v. Beaudoin, No.16-12324, (11th Cir. Mar.11, 2016),* downward variance based on lack of sophistication, low risk, absence of production and/or contact.

The facts in this case are not in dispute. Over a period of seven (7) months, Mr. Bonini engaged in sexual activity with minor children via the internet (chat room) wherein he engaged in the sexual exploitation of the minor children. There is no excuse for his actions and he makes no excuses. He has plead guilty because he cannot live with his actions and knows the severity of his crimes. He is ashamed and disgusted by his criminal behavior. For the reasons set forth within this sentencing memorandum, the undersigned counsel asks this Honorable Court to vary downward from the advisory guideline range and impose a sentence with the sentencing range of 188-235months of imprisonment.

Respectfully submitted,

Tracey Kagan, Esquire
/s/ Tracey Kagan
Florida Bar: 0143472
501 N. Magnolia Avenue
Orlando Florida 32801
407-538-8885
traceykagan@traceykaganlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the undersigned electronically filed the foregoing with the Clerk of Cout (CM/ECF) by using the CM/ECF system which will send Notice of Electronic Filing to the following: Brandon Cruz, Assistant United States Attorney, this 15th day of October, 2025.

/s/Tracey Kagan
-----------------------------------------
Attorney for Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

**UNITED STATES OF AMERICA,**                    **NO.: 6:25-CR-55-JSS-DCI**

**VS**

**ITALO RAFAEL BRETT BONINI**
_____
**DEFENDANT**


**APPENDICES**

LETTERS OF RECOMMENDATION……………………………………………………...A

CERTIFICATES………………………………………………………………………..B

DR. DANZIGER REPORT…………………………………………………………….C

DR. MCCLAIN REPORT…………………………………………………………….D

Letter Reference ,Recomendation  to the Judge in Relation to the Court sentencing of
Mr. ITALO BRETT BONINI

Dear Judge;

I am writing this letter as a character reference for ITALO BRETT BONINI , I have  known
Mr Brett  Bonini, for many years  and I can proudly say that he is a person of good character.
In my experience, Mr ITALO BRETT BONINI, has always been an amazing  Music teacher,
person, friend, honest , hardworking and responsible individual. He is always willing to lend
a helping hand to those in need, and I have seen first-hand his dedication to his students,
family and friends..
I can attest that Mr.Brett Bonini has shown sincere remorse for his offenses, is a valuable
member of our society who has made a positive impact on those around him. I strongly
recommend Mr. Brett Bonini as a person o good character who deserves leniency in his
current legal situation. MAKING A MISTAKE DOES NOT MAKE HIM A BAD PERSON.
Your Honor ,Thank you for accepting  and taking the time to read my letter.

Sincerely

Name .... *Ricardo O Gonzalez* ....          Date .. *05/18/2025* ....

Signature, .... *[signature]* ....

Phone  number .... *321697 2124* ....

Em.... *Ricardogonzales75@hotmail.com* ....

Letter Reference ,Recomendation  to the Judge in Relation to the Court sentencing of
Mr. ITALO BRETT BONINI

Dear Judge;

I am writing this letter as a character reference for ITALO BRETT BONINI , I have  known
Mr Brett  Bonini, for many years  and I can proudly say that he is a person of good character.
In my experience, Mr ITALO BRETT BONINI, has always been an amazing  Music teacher,
person, friend, honest , hardworking and responsible individual. He is always willing to lend
a helping hand to those in need, and I have seen first-hand his dedication to his students,
family and friends..
I can attest that Mr.Brett Bonini has shown sincere remorse for his offenses, is a valuable
member of our society who has made a positive impact on those around him. I strongly
recommend Mr. Brett Bonini as a person o good character who deserves leniency in his
current legal situation. MAKING A MISTAKE DOES NOT MAKE HIM A BAD PERSON.
Your Honor ,Thank you for accepting  and taking the time to read my letter.



Sincerely

Name  *Timothy T. Hearn*                          Date  *7/13/25*

Signature  *Timothy T. Hearn*

Phone  number ......................

Em *t.t.hearn.music @gmail.com*
*Piano  Teacher + Music Director*

Letter Reference ,Recomendation  to the Judge in Relation to the Court sentencing of
Mr. ITALO BRETT BONINI

Dear Judge;

I am writing this letter as a character reference for ITALO BRETT BONINI , I have  known
Mr Brett  Bonini, for many years  and I can proudly say that he is a person of good character.
In my experience, Mr ITALO BRETT BONINI, has always been an amazing  Music teacher,
person, friend, honest , hardworking and responsible individual. He is always willing to lend
a helping hand to those in need, and I have seen first-hand his dedication to his students,
family and friends..
I can attest that Mr.Brett Bonini has shown sincere remorse for his offenses, is a valuable
member of our society who has made a positive impact on those around him. I strongly
recommend Mr. Brett Bonini as a person o good character who deserves leniency in his
current legal situation. MAKING A MISTAKE DOES NOT MAKE HIM A BAD PERSON.
Your Honor ,Thank you for accepting  and taking the time to read my letter.


Sincerely

Name _Francisco S. Hernandez_

Signature, ..........................

Phone  number ....._407-912-82-46_

Em...._Pancho17061987@Gmail.com_

Date _05_ | _21_ | _2025_

Letter Reference ,Recomendation  to the Judge in Relation to the Court sentencing of Mr. ITALO BRETT BONINI

Dear Judge;

I am writing this letter as a character reference for ITALO BRETT BONINI , I have  known Mr Brett  Bonini, for many years  and I can proudly say that he is a person of good character. In my experience, Mr ITALO BRETT BONINI, has always been an amazing  Music teacher, person, friend, honest , hardworking and responsible individual. He is always willing to lend a helping hand to those in need, and I have seen first-hand his dedication to his students, family and friends..
I can attest that Mr.Brett Bonini has shown sincere remorse for his offenses, is a valuable member of our society who has made a positive impact on those around him. I strongly recommend Mr. Brett Bonini as a person o good character who deserves leniency in his current legal situation. MAKING A MISTAKE DOES NOT MAKE HIM A BAD PERSON.
Your Honor ,Thank you for accepting  and taking the time to read my letter.

Sincerely

Name ...... *Andy Suarez*

Date ... *05/21/2025* ...........

Signature, ...............

Phone  number ... *689 286 6453*

Em... *Suarez.andy13@gmail.com*

Letter Reference ,Recomendation  to the Judge in Relation to the Court sentencing of
Mr. ITALO BRETT BONINI

Dear Judge;

I am writing this letter as a character reference for ITALO BRETT BONINI , I have  known
Mr Brett  Bonini, for many years  and I can proudly say that he is a person of good character.
In my experience, Mr ITALO BRETT BONINI, has always been an amazing  Music teacher,
person, friend, honest , hardworking and responsible individual. He is always willing to lend
a helping hand to those in need, and I have seen first-hand his dedication to his students,
family and friends..
I can attest that Mr.Brett Bonini has shown sincere remorse for his offenses, is a valuable
member of our society who has made a positive impact on those around him. I strongly
recommend Mr. Brett Bonini as a person o good character who deserves leniency in his
current legal situation. MAKING A MISTAKE DOES NOT MAKE HIM A BAD PERSON.
Your Honor ,Thank you for accepting  and taking the time to read my letter.

Sincerely

Name ..Ana  Alcivar

Date ..May 30-2025

Signature,

Phone  number .407-616-7011.

Em...anaalcivar@yahoo.com.

Letter Reference ,Recomendation  to the Judge in Relation to the Court sentencing of
Mr. ITALO BRETT BONINI

Dear Judge;

I am writing this letter as a character reference for ITALO BRETT BONINI , I have  known
Mr Brett  Bonini, for many years  and I can proudly say that he is a person of good character.
In my experience, Mr ITALO BRETT BONINI, has always been an amazing  Music teacher,
person, friend, honest , hardworking and responsible individual. He is always willing to lend
a helping hand to those in need, and I have seen first-hand his dedication to his students,
family and friends..
I can attest that Mr.Brett Bonini has shown sincere remorse for his offenses, is a valuable
member of our society who has made a positive impact on those around him. I strongly
recommend Mr. Brett Bonini as a person o good character who deserves leniency in his
current legal situation. MAKING A MISTAKE DOES NOT MAKE HIM A BAD PERSON.
Your Honor ,Thank you for accepting  and taking the time to read my letter.

Sincerely

Name *Elizabeth Mosquera*                          Date 06/06/2025

Signature, ...

Phone  number (407) 280-2922

Em... elitamosquera@yahoo.com

Letter Reference ,Recomendation  to the Judge in Relation to the Court sentencing of
Mr. ITALO BRETT BONINI

Dear Judge;

I am writing this letter as a character reference for ITALO BRETT BONINI , I have  known
Mr Brett  Bonini, for many years  and I can proudly say that he is a person of good character.
In my experience, Mr ITALO BRETT BONINI, has always been an amazing  Music teacher,
person, friend, honest , hardworking and responsible individual. He is always willing to lend
a helping hand to those in need, and I have seen first-hand his dedication to his students,
family and friends..
I can attest that Mr.Brett Bonini has shown sincere remorse for his offenses, is a valuable
member of our society who has made a positive impact on those around him. I strongly
recommend Mr. Brett Bonini as a person o good character who deserves leniency in his
current legal situation. MAKING A MISTAKE DOES NOT MAKE HIM A BAD PERSON.
Your Honor ,Thank you for accepting  and taking the time to read my letter.

Sincerely

Name _SHEYLA  TIJERINO_                    Date _6 - 6 - 2025_

Signature, _____

Phone  number _954-591-2760_

Em _STEJERINO@yahoo.com_

Letter Reference ,Recomendation  to the Judge in Relation to the Court sentencing of
Mr. ITALO BRETT BONINI

Dear Judge;

I am writing this letter as a character reference for ITALO BRETT BONINI , I have  known
Mr Brett  Bonini, for many years  and I can proudly say that he is a person of good character.
In my experience, Mr ITALO BRETT BONINI, has always been an amazing  Music teacher,
person, friend, honest , hardworking and responsible individual. He is always willing to lend
a helping hand to those in need, and I have seen first-hand his dedication to his students,
family and friends..
I can attest that Mr.Brett Bonini has shown sincere remorse for his offenses, is a valuable
member of our society who has made a positive impact on those around him. I strongly
recommend Mr. Brett Bonini as a person o good character who deserves leniency in his
current legal situation. MAKING A MISTAKE DOES NOT MAKE HIM A BAD PERSON.
Your Honor ,Thank you for accepting  and taking the time to read my letter.

Sincerely

Name .... Polyana Almeida                        Date .. 6/13/2025 ............

Signature, .. Almeida

Phone  number .. 321 948 4969

Em.............................

Letter Reference ,Recomendation  to the Judge in Relation to the Court sentencing of
Mr. ITALO BRETT BONINI

Dear Judge;

I am writing this letter as a character reference for ITALO BRETT BONINI , I have  known
Mr Brett  Bonini, for many years  and I can proudly say that he is a person of good character.
In my experience, Mr ITALO BRETT BONINI, has always been an amazing  Music teacher,
person, friend, honest , hardworking and responsible individual. He is always willing to lend
a helping hand to those in need, and I have seen first-hand his dedication to his students,
family and friends..
I can attest that Mr.Brett Bonini has shown sincere remorse for his offenses, is a valuable
member of our society who has made a positive impact on those around him. I strongly
recommend Mr. Brett Bonini as a person o good character who deserves leniency in his
current legal situation. MAKING A MISTAKE DOES NOT MAKE HIM A BAD PERSON.
Your Honor ,Thank you for accepting  and taking the time to read my letter.

Sincerely

Name ....MABIO COSTA....          Date ....6-18-25....

Signature ....................

Phone  number ....407-616-417....

Em..............................

Letter Reference ,Recomendation  to the Judge in Relation to the Court sentencing of
Mr. ITALO BRETT BONINI

Dear Judge;

I am writing this letter as a character reference for ITALO BRETT BONINI , I have  known
Mr Brett  Bonini, for many years  and I can proudly say that he is a person of good character.
In my experience, Mr ITALO BRETT BONINI, has always been an amazing  Music teacher,
person, friend, honest , hardworking and responsible individual. He is always willing to lend
a helping hand to those in need, and I have seen first-hand his dedication to his students,
family and friends..
I can attest that Mr.Brett Bonini has shown sincere remorse for his offenses, is a valuable
member of our society who has made a positive impact on those around him. I strongly
recommend Mr. Brett Bonini as a person o good character who deserves leniency in his
current legal situation. MAKING A MISTAKE DOES NOT MAKE HIM A BAD PERSON.
Your Honor ,Thank you for accepting  and taking the time to read my letter.

Italo loves his students at Hunter's Creek middle School, He
regularly sent me messages and videos bragging about their
acto accomplishments and he was doing incredible work with them,
One of his regrets he felt he let his students down. He genuinly love
and cares for them as he does his friends and family.

Sincerely

Name E Julie Simmons                    Date 6/29/25

Signature

Phone number 407.927.1838

Em julie.casteel@gmail.com

Letter Reference ,Recomendation  to the Judge in Relation to the Court sentencing of
Mr. ITALO BRETT BONINI

Dear Judge;

I am writing this letter as a character reference for ITALO BRETT BONINI , I have  known
Mr Brett  Bonini, for many years  and I can proudly say that he is a person of good character.
In my experience, Mr ITALO BRETT BONINI, has always been an amazing  Music teacher,
person, friend, honest , hardworking and responsible individual. He is always willing to lend
a helping hand to those in need, and I have seen first-hand his dedication to his students,
family and friends..
I can attest that Mr.Brett Bonini has shown sincere remorse for his offenses, is a valuable
member of our society who has made a positive impact on those around him. I strongly
recommend Mr. Brett Bonini as a person o good character who deserves leniency in his
current legal situation. MAKING A MISTAKE DOES NOT MAKE HIM A BAD PERSON.
Your Honor ,Thank you for accepting  and taking the time to read my letter.

Sincerely

Name ...YANET TAVERAS...........

Date 7/06/25...............

Signature, ................................

Phone  number 347-493-6810

Em....YANY 237699 @gmail.

Letter Reference ,Recomendation  to the Judge in Relation to the Court sentencing of
Mr. ITALO BRETT BONINI

Dear Judge;

I am writing this letter as a character reference for ITALO BRETT BONINI , I have  known
Mr Brett  Bonini, for many years  and I can proudly say that he is a person of good character.
In my experience, Mr ITALO BRETT BONINI, has always been an amazing  Music teacher,
person, friend, honest , hardworking and responsible individual. He is always willing to lend
a helping hand to those in need, and I have seen first-hand his dedication to his students,
family and friends..
I can attest that Mr.Brett Bonini has shown sincere remorse for his offenses, is a valuable
member of our society who has made a positive impact on those around him. I strongly
recommend Mr. Brett Bonini as a person o good character who deserves leniency in his
current legal situation. MAKING A MISTAKE DOES NOT MAKE HIM A BAD PERSON.
Your Honor ,Thank you for accepting  and taking the time to read my letter.

Sincerely

Name ....Betsy Barreto.....                                    Date ....6-12-2025....

Signature, ....Betsy Barreto....

Phone  number ....407 9246340

Em...Colyani@me.com

I known  Italo  since  he was  2015 , I watch  him  grow
and  become  a grate  Young  adult , share  all  his  achivments
and  celebrate  when  he  became  a  teacher . He  teach  one  of my
kids  and  did  a grate  job.  Is  sad  for  every one  who  knew  him
I Hope  for  the  victmis , for  the  familias  and  for  him  this  will  be  over
soon.         Sincrly   Baby Barreto

# Orange County Corrections Department

## Community Corrections Division

*Certificate of Completion presented to*

# Italo Rafael Brettbonini

*For the successful completion of*

# Moral Reconation Therapy
# Getting a Job

*This Moral Reconation Therapy curriculum focuses on teaching life skills needed to get and keep a job while introducing career planning.*

August 28, 2025

C. Gomez, Senior Community Corrections Officer

## GOSPEL ECHOES TEAM BIBLE STUDIES

# Certificate

This is to certify that _Italo Brett Bonini_

has successfully completed the

Gospel Echoes Team

School of Correspondence Bible Studies Advanced Course

## Growing Through Bible Study

Granted this _7th_ day of _September_, 20 _25_

**GOSPEL ECHOES TEAM**
Association, Inc.

_Shirley_
Instructor

_Marvin R. Beachy_
Marvin R. Beachy, President

EH032017 6-C

© 2013 Gospel Echoes Team
All Rights Reserved. Printed in USA



# GOSPEL ECHOES TEAM BIBLE STUDIES

## Certificate

*This is to certify that* Italo Brett Bonini

*has successfully completed the*

Gospel Echoes Team

School of Correspondence Bible Studies Advanced Course

**The Christian Way in Marriage**

Granted this _7th_ day of _September_, 20 _25_

Shirley
_____
Instructor

Marvin R. Beachy
_____
Marvin R. Beachy, President

GOSPEL
ECHOES TEAM
Association, Inc.

EH032017 6-C

© 2013 Gospel Echoes Team
All Rights Reserved. Printed in USA

# GOSPEL ECHOES TEAM
## CERTIFICATE

*This certifies that* Italo Brett Bonini

*has successfully completed the*

## GOSPEL ECHOES TEAM
### SCHOOL OF CORRESPONDENCE BIBLE STUDIES BASIC COURSE



1. God's Great Love
2. Growing in the Christian Life
3. Sharing Your Christian Faith
4. Growing Toward Maturity

*Date Granted* September 7, 2025

Shirley

*Bible Course Instructor*

# Certificate of Achievement

This certificate is presented to

*Italo Brett Bonini*

For having satisfactorily completed the self-study course entitled

# God's Plan for the World



Wisconsin Ev. Lutheran Synod
Commission on Special Ministries
Prison Ministry Committee
N16W23377 Stone Ridge Drive
Waukesha, WI 53188-1108

*9-9-2025*

Date Issued

*Darren Green*
Director

# Certificado de Exito

se presenta a

*Italo Brett Bonini*

por haber terminando satisfactoriamente el curso autodidactico entitulado

## Vida despues de la Muerte



Wisconsin Ev. Lutheran Synod
Commission on Special Ministries
Prison Ministry Committee
N16W23377 Stone Ridge Drive
Waukesha, WI 53188-1108

*El 9 de Septiembre, 2025*
La Fecha

*Leon L Brands*
Director

# Certificate of Achievement

This certificate is presented to

*Italo Brett Bonini*

For having satisfactorily completed the self-study course entitled

## Peer Pressure





Wisconsin Ev. Lutheran Synod
Prison Ministry
Institutional Ministries
P.O. 452
New Ulm, MN 56073

9-9-2025

Date Issued

Ed Frey, Director of Ministry

# Certificate of Achievement

This certificate is presented to

*Italo Brett Bonini*

For having satisfactorily completed the self-study course entitled

## Parenting from Prison



Wisconsin Ev. Lutheran Synod
Commission on Special Ministries
Prison Ministry Committee
N16W23377 Stone Ridge Drive
Waukesha, WI 53188-1108

*9-9-2025*

Date Issued

*Darren Green*

Director

# Certificate of Achievement

This certificate is presented to

*Italo Brett Bonini*

For having satisfactorily completed the self-study course entitled

## Dealing with Depression and Anxiety



Wisconsin Ev. Lutheran Synod
Commission on Special Ministries
Prison Ministry Committee
N16W23377 Stone Ridge Drive
Waukesha, WI 53188-1108

9-9-2025
Date Issued

*Darren Green*
Director

# Certificate of Achievement

This certificate is presented to

*Italo Brett Bonini*

For having satisfactorily completed the self-study course entitled

## Job

 **WELS**
Christ's Love, Our Calling.

Wisconsin Ev. Lutheran Synod
Commission on Special Ministries
Prison Ministry Committee
N16W23377 Stone Ridge Drive
Waukesha, WI 53188-1108

9-9-25
Date Issued

*Darren Green*
Director

# Certificate of Achievement

This certificate is presented to

_Italo Brett Bonini_

For having satisfactorily completed the self-study course entitled

## Overcoming the Guilt of Sin



Wisconsin Ev. Lutheran Synod
Commission on Special Ministries
Prison Ministry Committee
N16W23377 Stone Ridge Drive
Waukesha, WI 53188-1108

9-9-2025
_____
Date Issued

_Darren Green_
_____
Director

# Certificate of Achievement

This certificate is presented to

**Italo Brett Bonini**

For having satisfactorily completed the self-study course entitled

# Enough is Enough



Wisconsin Ev. Lutheran Synod
Commission on Special Ministries
Prison Ministry Committee
N16W23377 Stone Ridge Drive
Waukesha, WI 53188-1108

*9-9-2025*
Date Issued

*Darren Green*
Director

# Certificate of Achievement

This certificate is presented to

*Italo Brett Bonini*

For having satisfactorily completed the self-study course entitled

## Am I Worthy



Wisconsin Ev. Lutheran Synod
Commission on Special Ministries
Prison Ministry Committee
N16W23377 Stone Ridge Drive
Waukesha, WI 53188-1108

9-9-25

Date Issued

*Darren Green*

Director

# Certificate of Achievement

This certificate is presented to

*Italo Brett Bonini*

For having satisfactorily completed the self-study course entitled

## God Helps Me Manage My Anger





Wisconsin Ev. Lutheran Synod
Prison Ministry
Institutional Ministries
P.O. 452
New Ulm, MN 56073

9-9-2025
Date Issued

Ed Frey, Director of Ministry

# Certificate of Achievement

This certificate is presented to

## Italo Brett Bonini

For having satisfactorily completed the self-study course entitled

# God Creates Our World



Wisconsin Ev. Lutheran Synod
Prison Ministry
Institutional Ministries
P.O. 452
New Ulm, MN 56073

9-9-2025

Date Issued

Ed Frey, Director of Ministry

# Certificate of Achievement

This certificate is presented to

*Italo Brett Bonini*

For having satisfactorily completed the self-study course entitled

## God Created Man and Woman


**WELS**
Christ's Love, Our Calling.

Wisconsin Ev. Lutheran Synod
Commission on Special Ministries
Prison Ministry Committee
N16W23377 Stone Ridge Drive
Waukesha, WI 53188-1108

9-9-2025
Date Issued

*Darren Green*
Director

# Certificate of Achievement

This certificate is presented to

*Italo Brett Bonini*

For having satisfactorily completed the self-study course entitled

## So I'm Forgiven: Now What?

 **WELS**
Christ's Love, Our Calling.

Wisconsin Ev. Lutheran Synod
Commission on Special Ministries
Prison Ministry Committee
N16W23377 Stone Ridge Drive
Waukesha, WI 53188-1108

9-9-2025
Date Issued

*Darren Green*
Director

# Certificate of Achievement

This certificate is presented to

## *Italo Brett Bonini*

For having satisfactorily completed the self-study course entitled

## A Broken-Hearted Father



WELS
Christ's Love, Our Calling.



INSTITUTIONAL
MINISTRIES

Wisconsin Ev. Lutheran Synod
Prison Ministry
Institutional Ministries
P.O. 452
New Ulm, MN 56073

9-9-2025

Date Issued

Ed Frey, Director of Ministry

# Certificate of Achievement

This certificate is presented to

*Italo Brett Bonini*

For having satisfactorily completed the self-study course entitled

# The Law of God



Wisconsin Ev. Lutheran Synod
Commission on Special Ministries
Prison Ministry Committee
N16W23377 Stone Ridge Drive
Waukesha, WI 53188-1108

*9-9-2025*

Date Issued

*Darren Green*

Director

# Certificate of Achievement

This certificate is presented to

*Italo Brett Bonini*

For having satisfactorily completed the self-study course entitled

## You Must Be Born Again



**WELS**
Christ's Love, Our Calling.

Wisconsin Ev. Lutheran Synod
Commission on Special Ministries
Prison Ministry Committee
N16W23377 Stone Ridge Drive
Waukesha, WI 53188-1108

*9-9-2025*
Date Issued

*Darren Green*
Director

# Certificate of Achievement

This certificate is presented to

*Italo Brett Bonini*

For having satisfactorily completed the self-study course entitled

## Jesus is Lord Addiction is Not





Wisconsin Ev. Lutheran Synod
Prison Ministry
Institutional Ministries
P.O. 452
New Ulm, MN 56073

9-9-2025

Date Issued

Ed Frey, Director of Ministry

# Certificate of Achievement

This certificate is presented to

_Italo Brett Bonini_

For having satisfactorily completed the self-study course entitled

## Free to Live



Wisconsin Ev. Lutheran Synod
Commission on Special Ministries
Prison Ministry Committee
N16W23377 Stone Ridge Drive
Waukesha, WI 53188-1108

_9-9-2025_
Date Issued

_Darren Green_
Director

# Certificate of Achievement

This certificate is presented to

*Italo Brett Bonini*

For having satisfactorily completed the self-study course entitled

## The Words Jesus Taught



Wisconsin Ev. Lutheran Synod
Commission on Special Ministries
Prison Ministry Committee
N16W23377 Stone Ridge Drive
Waukesha, WI 53188-1108

*9-9-2025*
Date Issued

*Darren Green*
Director

# Certificate of Achievement

This certificate is presented to

*Italo Brett Bonini*

For having satisfactorily completed the self-study course entitled

## The Reluctant Prophet



Wisconsin Ev. Lutheran Synod
Commission on Special Ministries
Prison Ministry Committee
N16W23377 Stone Ridge Drive
Waukesha, WI 53188-1108

*9-9-2025*

Date Issued

*Darren Green*

Director

# Certificate of Achievement

This certificate is presented to

*Italo Brett Bonini*

For having satisfactorily completed the self-study course entitled

## The Death and Rising of Jesus Christ



**WELS**
Christ's Love, Our Calling.

**INSTITUTIONAL MINISTRIES**

Wisconsin Ev. Lutheran Synod
Prison Ministry
Institutional Ministries
P.O. 452
New Ulm, MN 56073

9-9-2025

Date Issued

Ed Frey, Director of Ministry

# Certificate of Achievement

This certificate is presented to

*Itata Brett Bonini*

For having satisfactorily completed the self-study course entitled

## What Christians Believe

 **WELS**
Christ's Love, Our Calling.

Wisconsin Ev. Lutheran Synod
Commission on Special Ministries
Prison Ministry Committee
N16W23377 Stone Ridge Drive
Waukesha, WI 53188-1108

9-9-2025
_____
Date Issued

*Darren Green*
_____
Director

# PSYCHIATRIC AFFILIATES, P.A.

2300 MAITLAND CENTER PARKWAY, SUITE 211
MAITLAND, FLORIDA 32751

(407) 679-6400   FAX (407) 679-7988

JEFFREY A. DANZIGER, M.D.
*Diplomate, American Board of Psychiatry and Neurology*
*Forensic, Geriatric and Addiction Psychiatry*

SUSAN M. SKOLLY-DANZIGER, PHARM.D., MS
*Diplomate, American Board of Applied Toxicology*
*Forensic Toxicology*

April 13, 2025

Tracey Kagan, Esq.
Tracey Kagan Law
207 E Livingston St Fl 2
Orlando, FL 32801

RE:    United States of America v. Italo Brett Bonini
      Case No: 6:25-cr-00055

Dear Ms. Kagan,

*1.*    Pursuant to your request, I conducted a psychiatric and psychosexual evaluation of your client, Italo Brett Bonini. Mr. Bonini is a 25-year-old man, facing Federal charges all enticement of a minor times two, and sexual exploitation of the child. My interview with the defendant took place on April 11, 2025, at the Orange County Jail. Including testing, the assessment lasted three hours and 35 minutes. I did not have the indictment or any investigative reports, although I was able to find some local news stories.

*2.*    I am asked to opine whether the defendant suffers from any psychiatric, substance use, or psychosexual disorders, and what treatment would be appropriate and indicated from a clinical standpoint. I was asked to opine whether the defendant represents a heightened risk of harm or danger to himself, children, or to the community at large, and whether there are any potential mitigating factors worthy of consideration by the Court and Government.

*3.*    Before the interview began, I explained I was not there to see him for treatment, but instead, for an evaluation requested by his attorney. I added whatever I was told was not confidential, but rather it would appear in a written report which would be sent directly to his attorney. He and his attorney would in turn decide whether the report would be released to any third parties, such as the Judge and prosecutor, or whether I would be asked to testify at a future hearing.

## Collateral Information

*4.*    According to publicly available local news stories, the defendant Mr. Bonini was a music teacher at the Hunters Creek Middle School, and he is accused of having inappropriate and sexual

conversations with children online. The defendant was investigated by the FBI, and there are two known potential victims, an eight-year-old boy and his younger brother, who live in Maryland.

5.   The FBI stated Mr. Bonini portrayed himself as a 16-year-old, and communicated with the children through the Discord gaming app. He is accused of exposing himself, and then telling the two young boys to expose themselves over a video chat on Discord. Seized chats show he offered the boys video gaming currency in exchange for exposing themselves.

**Interview with Italo Brett Bonini**

<u>Social History</u>

6.   Mr. Bonini is a 25-year-old man, August 5, 1999 in Caracas, Venezuela, of a Venezuelan father and Italian mother. He came to the United States before his second birthday as a "DACA Dreamer," and he is a citizen of Venezuela. He was raised by his parents, Italo and Laura, who are still together and married to one another. He grew up in the Hunters Creek area of Orange County, graduating from Freedom High School in 2017. He described himself as an above average student, and very interested in music. He was never in special education, he never had to repeat a grade, and he never had an individual education program. He attended Rollins College in Winter Park, receiving a Bachelor's degree in music.

7.   Prior to his arrest on February 24, 2025, he was employed as a music teacher at Hunters Creek Middle School, a school he had attended as a youth. He also taught private lessons, and he was also a member of a group of musicians who would play at conventions and other events. He never served in the military, and he has never received disability income.

8.   Mr. Bonini is single, never married, and he has no children. He had been living with his parents in Hunters Creek. His religious upbringing was in the Mormon/LDS church, noting he was not active in recent years, although he still considers himself a member of that faith.

<u>Prior Legal History</u>

9.   Mr. Bonini denied any previous history of arrests or legal charges, or any involvement with the criminal justice system, as a juvenile or as an adult. He denied any previous sexually related charges. He denied any previous allegations of sexual misconduct in any setting, including school, work, or the home. He has never previously been investigated by DCF.

10.  He did not relate a history of a conduct disorder as a juvenile. He denied as a youth any history of running away from home, staying out all night without permission, excessive truancy, fire setting, animal cruelty, initiating fights, bullying others, vandalism, weapons charges, stealing from stores, stealing by breaking into homes or cars, or stealing by confronting a victim.

<u>Medical History</u>

Tracey Kagan, Esq.
Italo Brett Bonini
Page 3 of 11

11.  Mr. Bonini is not currently receiving any medications at the jail. He is allergic to shellfish, but there are no known drug allergies. He described himself as medically healthy, with no history of surgeries.

12.  He denied any history of serious injuries or accidents. There is no history of head injury, concussions, or loss of consciousness.

Substance Use History

13.  Mr. Bonini does not smoke cigarettes. He denied the use of tobacco or nicotine in any form, including chewing tobacco, vaping devices, or nicotine pouches.

14.  He does not drink alcohol at all, "not even a sip." There is no history suggestive of daily drinking, morning drinking, tolerance to alcohol, alcoholic blackouts, craving alcohol, often drinking more than intended, or failed efforts to quit drinking. There is no history of violent behavior associated with alcohol, driving while under the influence of alcohol, or alcohol related arrests. He denied that alcohol use ever resulted in family, health, job, or legal problems.

15.  He does not smoke marijuana, and he has never obtained a medical cannabis card. He denied the use of synthetic cannabinoids such as K2, spice, or Delta 8.

16.  He denied the use of other street drugs, including powder cocaine, crack cocaine, heroin, fentanyl, or intravenous drugs. He denied the use of stimulant drugs such as ecstasy, molly, and crystal methamphetamine. He denied the abuse of hallucinogens or inhalants. He has never used anabolic steroids, and he denied the use or misuse of prescription sedatives, opioids, and stimulants.

17.  He has never attended a drug or alcohol rehabilitation program, not outpatient, intensive outpatient, partial hospital, or residential. He has never gone through a detoxification protocol, and he has never attended a 12-step group such as Alcoholics Anonymous or Narcotics Anonymous.

Family History

18.  Mr. Bonini is not aware of any family members who have been in a psychiatric hospital, attempted suicide, or been treated with psychiatric medications. To the best of his knowledge, no family members have ever been diagnosed with depression, bipolar disorder, or schizophrenia. He reported one close family member who has been troubled by anxiety.

19.  He is not aware of any family members who have had issues with the abuse of alcohol, street drugs, or prescription drugs.

Psychiatric History

20.  Mr. Bonini has never been hospitalized in a psychiatric facility. He has never been Baker Acted or civilly committed.

Tracey Kagan, Esq.
Italo Brett Bonini
Page 4 of 11

21.    He denied any history of suicide attempts. He denied any history of self-injurious behavior, aborted or interrupted suicide attempts, or any preparations to end his life such as writing a suicide note, giving away his belongings, or stockpiling medications.

22.    He has never been treated with psychiatric medications. He has never been under the care of a psychiatrist, psychologist, or psychotherapist. He was never seen by the Employee Assistance Program (EAP) at his workplace.

23.    There is no history of hallucinations, delusions, or psychotic symptoms. He did not relate a history of manic or hypomanic episodes, denying episodes characterized by at least four days of elation, euphoria, irritability, grandiosity, pressured speech, racing thoughts, markedly increased energy, a decreased need for sleep, or reckless spending; his history was not suggestive of an illness within the bipolar spectrum.

24.    He denied any history of major depressive episodes. He did not describe episodes characterized by at least two weeks of a mood that was predominantly sad, accompanied by feelings of hopelessness, worthlessness, anhedonia, and suicidal thinking, with changes in sleep, appetite, and energy.

25.    He described panic attacks occurring since childhood, characterized by unprovoked and spontaneous episodes of extreme anxiety, accompanied by physical symptoms of tremors, shortness of breath, rapid heart rate, chest pressure, chest tightness, and stomach upset. These incidents occur randomly, they may occur three or four times a month, and last perhaps 10 or 15 minutes. He reported only mild avoidance behavior, saying he tries to avoid the interstate highway less necessary, for fear of having one of these panic episodes while he is driving and unable to pull off the road.

26.    He did not describe generalized anxiety, denying any history of chronic and continuous tension, worry that is difficult to control, restlessness, fatigue, insomnia, and impaired concentration. However, and not unexpectedly, given the allegations against him in the serious nature of his legal predicament, he has developed a sense of worry, tension, insomnia, with apprehension as to what his legal fate will be.

27.    He did not describe any history of severe life-threatening stressors which he continues to reexperience, and the history was not suggestive of a PTSD diagnosis. He did not describe the ruminative thinking and repetitive rituals suggestive of a diagnosis of obsessive-compulsive disorder. He was never diagnosed with ADHD nor treated with stimulant medications; he did not describe a history of impaired concentration, distractibility, impulsivity, or increased motor behavior dating back to his childhood.

28.    Presently, while at the Orange County Jail, Mr. Bonini is not receiving any attention from jail mental health services, and he is not prescribed any psychiatric medications. Because of the nature of his charges, he is presently housed in a protective custody dormitory.

Mental Status Examination

Tracey Kagan, Esq.
Italo Brett Bonini
Page 5 of 11

29.   Mental status examination revealed a cooperative and pleasant young man who appeared his stated age. He was about 5'10" tall and 200 pounds, dressed in a blue jail uniform, and he reported no tattoos. Speech was of a regular rate and rhythm, and motor behavior was normal, without restlessness, tremor, or involuntary movements. His flow of thought was logical and sequential, without circumstantiality, tangentiality, or flight of ideas. He denied auditory, visual, or tactile hallucinations. He denied paranoid, grandiose, referential, and religious delusions.

30.   He denied suicidal ideas or plans, denying any current wish to be dead, and denying any wish to go to sleep and never waking up. He denied any recent self-injurious behavior, aborted or interrupted suicide attempts, or any preparations to end his life such as writing a suicide note or giving away his belongings. He denied any thoughts of violence towards others.

31.   He described his mood as "up and down," saying he was worried about the outcome of his case, the impact this will have on his family, concerns the stressful impact the physical health and well-being of his parents. He reported feelings of tension apprehension, with insomnia, but without fatigue, and with normal appetite and stable weight. He denied feelings of hopelessness, but he reported feelings of shame, and a sense of fear about what will happen to him. He did not present as agitated or irritable, and there were no symptoms suggestive of manic acceleration. He was fully oriented to person, place, and time, recent and remote memory was intact, and intellect was likely in the above average range, given his grammar, diction, fund of knowledge, and educational achievement.

Sexual History

32.   Mr. Bonini denied any previous history of sexually related charges. He denied any prior allegations of sexual misconduct in any other setting, including school, work, and his home.

33.   He reported possible abuse by his first-grade teacher, a woman, although the details he remembers are limited. He recalls her taking him to the bathroom, taking down his pants, but he cannot clearly recall what happened. He remembered being afraid to go to school in first grade, until his parents switched him into a class with another teacher. He denied any other recollections of suffering abuse as a child.

34.   He denied ever engaging in a contact offense of a sexual nature against the minor of either gender, or a person of any age or gender.

35.   He described himself as having sexual interest in both men and women, although he described himself as more romantically attracted to females. He self-reported his sexual interest as with adult men and adult women. He never "came out" as gay or bisexual, and he denied having any internal struggles between his LDS faith and sexual interest. He also described himself as cis-gender, with the pronouns he/him.

36.   He denied ever having sex, and he denied ever being in a dating or romantic relationship. He denied having sexual contact with another person of any type, including oral sex, anal sex, penile-vaginal sex, or any sort of mutual masturbation. He reported having "no sex at all," and no relationships, saying "I just haven't found anyone, I put my career first." He described

himself as a 25-year-old virgin. He has never used the Internet or electronic means to meet with a stranger of any age or gender or a "hookup" for an in person sexual encounter.

37. Other than the allegations raised in his criminal charges, he denied any other exhibitionistic behavior. He denied any history of public masturbation, voyeurism, or frottage. He denied any interest or experience with sadomasochism, bondage and discipline, or dominance and submission. He denied any history of fetishes involving body parts or objects. He has never been with a prostitute. There is no history of cross-dressing. There is no history of sexual interest involving urine, feces, or animals.

38. He reported looking at pornography occasionally, "mostly straight adult male/female." He denied any narrow interest or focus in pornography, other than that the individuals are generally attractive, and he looks at both the man and the woman in the scene. He will rarely look at adult male/male or adult female/female pornography. He denied viewing pornography that would be considered sadomasochistic, violence, or extreme. He denied ever viewing pornography containing child pornographic imagery.

Current Offense

39. Mr. Bonini recalled that in September and October 2024, he was engaging in regular chatting via Discord, but when he went to discussions about video gaming, he ended up communicating with underage boys. He agreed he portrayed himself as 16, and admitted he communicated through Discord with male children as young as eight years old. He acknowledged exposing himself, and asking the children to show their genitals. He indicated there were multiple such episodes, but none of the interactions were saved or recorded.

40. The father of one of the children in another state saw the messages, and law enforcement was contacted. Mr. Bonini said at the time this was going on he felt ashamed, with guilt afterwards, but there was sexual excitement involved, and he acknowledged masturbating during these video encounters. He agreed that he never met any of the children in person, never attempted to try to meet with them in person, and no contact offenses of any type ever occurred.

41. He recalled the day that law enforcement showed up at his home with a search warrant, with Orange County Sheriff's and FBI agents, who served a search warrant. He remembered being in one of the agent's vehicles, told he was not under arrest and free to leave; he did not recall being read his Miranda warnings. He did not recall exactly what he told the agent, although he said to me, "I confessed, I felt guilty."

**Psychological Testing**

42. *Psychological testing generates hypotheses based upon comparisons to normative and group data. The hypotheses generated by psychological testing are best interpreted in the context of available collateral data and the face-to-face examination of the subject.*

Minnesota Multiphasic Personality Inventory-3 (MMPI-3)

Tracey Kagan, Esq.
Italo Brett Bonini
Page 7 of 11

43.    The MMPI-3 is a widely accepted, broadband and objective psychological test used in the identification of adult psychopathology. Mr. Bonini completed the test on my laptop computer. The test was scored using the computer software authored by Drs. Ben-Porath and Tellegen, and published by Pearson Inc.

44.    Mr. Bonini generated a valid MMPI-3 protocol. He responded to all of the questions, and he responded to the questions in a careful and consistent fashion based on item content. There were no indications for symptom exaggeration or over-reporting, and similarly there were no indications for defensive responding or under-reported.

45.    The substantive scales were consistent with an individual demonstrating significant emotional distress. He reported a lack of positive emotions, a lack of interest, and anhedonia. He is likely self-critical and guilt-prone. He also reported multiple anxiety-related experiences, including generalized anxiety, intrusive ideations, a tendency to startle easily, and panic episodes. He likely experiences significant anxiety and anxiety-related problems. He described excessive worry, and preoccupation with disappointments. He described feelings of insecurity and inferiority, with feelings of incompetence and shame.

46.    He reported not enjoying social events and avoiding social situations, and he is likely socially introverted, with difficulty forming close relationships. He reports being shy, easily embarrassed, and uncomfortable around others. He is likely to be socially inhibited, anxious and nervous and social situations, and viewed by others as socially awkward.

47.    The profile was not suggestive of an individual experiencing psychotic or manic symptoms, with no indications for disordered thinking. There were no indications for any somatic or cognitive dysfunction, and no indications of any maladaptive externalizing and behaviors.

Abel Assessment for Sexual Interest, third edition (AASI-3)

48.    *The Abel Assessment has been criticized by some for a high rate of false positives and false negatives in identifying individuals with pedophilic interest. As such, I would not base opinions on sexual interest solely on the results of the Abel Assessment, and I use a second test of sexual interest (LOOK), while taking into account the clinical history and the face-to-face examination of the subject. Nevertheless, I still find the Abel Assessment useful, as it can provide relevant historical information and data, and to see whether its results are consistent with the information and findings obtained from other sources.*

49.    The Abel Assessment is a psychosexual evaluation and treatment system clinicians can use to evaluate adult men and women with sexual behavior problems. It is designed to measure a client's sexual interest and to obtain information regarding involvement in various abusive or problematic sexual behaviors.

50.    The first part of the Abel Assessment is a lengthy questionnaire which obtains detailed information about a client's sexual history and sexual attitudes. Consistent with the clinical interview, he denied problematic behaviors such as child molestation, child pornography,

Tracey Kagan, Esq.
Italo Brett Bonini
Page 8 of 11

exhibitionism, frottage, public masturbation, voyeurism, prostitutes, fetishism, and sadomasochism.

51. He reported being sexually abused at the age of six on perhaps four occasions, by a schoolteacher.

52. He generated a low and non-problematic score on the cognitive distortion scale. The items on this scale describe potential justifications frequently used by persons who are sexually involved with children. A higher score suggests a greater use of such cognitive distortions, while his score was low and not problematic. He generated a high score on the social desirability scale. This scale measures a person's reluctance to admit to any violation of common social values, such as impatience or feelings of anger. His high score suggests he may have responded to the test items in a somewhat defensive fashion.

53. The second part of the Abel Assessment has the client viewed non-pornographic images of men and women, boys and girls, of different ages and races. In a manner beyond the client's conscious awareness, the test can provide an objective measurement of interest in these various categories.

54. Mr. Bonini demonstrated sexual interest in the testing in both male adults and female adults. He also demonstrated interest in post pubescent teenage females and post pubescent teenage males. It should be noted that scores for post pubescent adolescents similar to the scores for adults are not a sign of sexual deviation; sexual interest in post pubescent adolescence is biologically normal, although it can become a serious legal and boundary issue if acted upon.

55. Mr. Bonini did not demonstrate sexual interest on the Abel Assessment in preschool children (under the age of five) of either gender. While he did not demonstrate sexual interest in the testing in grade school females (age 6-13), he did demonstrate sexual interest in the testing in grade school males ages 6 to 13.

56. He did not demonstrate interest in the Abel testing in other sexual paraphilias that were measured. He did not demonstrate interest in the testing in the areas of exhibitionism, voyeurism, frottage, fetishism, sadomasochism with males, or sadomasochism with females.

57. In summary, consistent with his self-report, Mr. Bonini demonstrated sexual interest on the testing in adult men and adult women; he also demonstrated sexual interest on the testing in post pubescent teenagers of both genders, a finding which is not a sign of sexual deviation, unless acted upon. However, the Abel Assessment was suggestive of sexual interest in prepubescent grade school age boys, but not grade school age girls.

LOOK Assessment

58. The LOOK assessment is a computer-based idiographic assessment of sexual interest, including pedophilia. LOOK generates data for the preference of age and gender. LOOK combines the participant's opportunity to report his sexual preferences, along with three covert viewing time validity measures. LOOK is always administered twice, a measure to control faking.

Tracey Kagan, Esq.
Italo Brett Bonini
Page 9 of 11

Additionally, LOOK incorporates an anti-feigning tool which requires participants to look at non-pornographic pictures, and to then make a decision concerning sexual attractiveness. Each administration of LOOK should be considered "an experiment," allowing the participant to demonstrate a comparison between their self-reported sexual interest versus the covert sexual interest viewing time.

59.   Mr. Bonini self-reported his sexual interest as adult men and adult women.

60.   The testing results demonstrated the greatest degree of sexual interest in post pubescent male teenagers, followed closely by sexual interest in post pubescent female teenagers. A somewhat lesser but still evident degree of sexual interest was seen in the areas of male adults (20s and 30s), female adults (20s and 30s), and mature adult males (40s and 50s). LOOK testing did not show heightened interest in male or female infants (under age 2), male or female small children (age 2-5), or pre-juvenile males and females (ages 6-11). Little interest was shown in senior males or senior females (age 70+).

61.   As noted above, it is not a sign of sexual deviation, and it is not considered to be a pathological pattern of sexual interest, to demonstrate sexual interest in postpubescent teenagers, although it can become a serious legal and boundary violation if acted upon. Unlike the Abel testing, LOOK was not suggestive of sexual interest in prepubescent boys or girls, and LOOK testing was not suggestive of pedophilic interest.

**Diagnosis**

- (Probable) Pedophilic Disorder

- Panic Disorder

- Adjustment Disorder with Mixed Anxious and Depressed Mood

**Discussion and Opinions**

62.   I was asked to conduct a psychiatric and psychosexual evaluation of Italo Brett Bonini, a 25-year-old man facing federal charges of enticement of a minor and sexual exploitation of a child. I was asked to offer opinions as to whether he suffers from any psychiatric, substance use, or psychosexual disorders, and what treatment would be appropriate and indicated. I was asked to opine whether he represents a heightened risk of harm or danger to himself, children, or to the community at large, and whether there are any potential mitigating factors worthy of consideration by the Court and the government.

63.   From a psychiatric standpoint, Mr. Bonini described a history of spontaneous and recurrent panic episodes, for which he has never received any treatment. He did not relate a history of any depressive, manic, or psychotic symptomatology, and the history was not suggestive of a disorder within the autism spectrum. Currently, and perhaps not surprisingly, Mr. Bonini is describing feelings of sadness, worry, and apprehension over his current legal situation and the seriousness of his circumstances. I have diagnosed him with panic disorder, of long-standing,

Tracey Kagan, Esq.
Italo Brett Bonini
Page 10 of 11

along with a current adjustment disorder with mixed anxious and depressive features. An adjustment disorder refers to the development of emotional or behavioral symptoms in response to an identifiable stressor; the symptoms result in some distress or impairment in functioning, but are not so severe as to meet criteria for any other psychiatric diagnosis.

64.    As such, Mr. Bonini in my opinion has a long-standing history of panic disorder, which is now further complicated by situational anxiety and depressive symptoms. There is no history of suicide attempts or self-injurious behavior, and no history of aggressive or violent outbursts. While he is currently depressed and anxious, he is not in my opinion suffering from any active symptoms of mental illness which would adversely impact his judgment, reasoning, or impulse control, or which would render him a heightened risk of harm or danger to himself, children, or to the community at large. From a treatment standpoint, antidepressant medications have been found to be effective in blocking spontaneous panic episodes. He would likely benefit from counseling and psychotherapy to teach him non-pharmacologic measures for controlling the anxiety symptoms, and to aid in dealing with his current and obviously stressful present circumstances.

65.    Mr. Bonini has no history of the abuse of alcohol, street drugs, or prescription medications, and there are no indications he suffers from any substance use disorder diagnosis. He is not in need of substance abuse rehabilitation or treatment. He does not, in my opinion, suffer from any substance use disorder diagnosis which would adversely impact his judgment, reasoning, or impulse control, or which would render him a heightened risk of harm or danger to himself, children, or to the community at large.

66.    Mr. Bonini has no previous history of criminal conduct, and there is no previous history of a violation of the rights of others or failure to follow societal norms and rules. He did not suffer from a conduct disorder as a juvenile, and other than the current allegations against him, there is no history suggestive of an antisocial personality disorder. There is no history of physically violent behavior or aggressive outbursts. Mr. Bonini, in my opinion, does not suffer from an antisocial personality disorder which would adversely impact his judgment, reasoning, or impulse control, or which would render him a heightened risk of harm or danger to himself, children, or to the community at large.

67.    However, Mr. Bonini likely demonstrates sexual interest in prepubescent children, in particular boys. It is of concern that at the age of 25, he has never had any sort of dating or romantic relationship, or has even attempted to engage in a relationship with a person of roughly his same age (of either gender). Psychosexual testing gave mixed results; the Abel Assessment suggested sexual interest in grade school aged boys, while LOOK testing did not. However, his reported actions in communicating with younger boys over the Internet, and then masturbating to the point of climax as the young boys exposed themselves to him, would be indicative of pedophilic interest in younger and prepubescent males.

68.    There are no indications Mr. Bonini engaged in any contact sexual offenses, and no indications he ever attempted to actually meet in person with a minor child for sexual purposes, despite being in a school setting as a teacher with access to many children. This would suggest a degree of impulse control. Mr. Bonini nevertheless would in my opinion require psychosexual therapy

Tracey Kagan, Esq.
Italo Brett Bonini
Page 11 of 11

and counseling of an individual and group nature, whenever the Court allows him to be free from incarceration and confinement. Given the absence of any contact offenses, it is more likely than not he will be able to live safely within the community whenever his term of incarceration ends, with counseling, psychotherapy, and appropriate restrictions and supervision as deemed necessary by the Court.

69.    The above opinions are to a reasonable degree of medical certainty.

Respectfully submitted,

Jeffrey A. Danziger, M. D.

# Valerie R. McClain, Psy.D.

Licensed Psychologist #PY0005178
P.O. Box 260878, Tampa, FL 33685-0878
Pager: (727) 508-4298
Email: vraemac@aol.com

## FORENSIC PSYCHOLOGICAL EVALUATION

NAME: Italo Brett Bonini
AGE: 26
DOB: 08/05/1999
DATE OF EVALUATION: 08/26/2025
PLACE OF EVALUATION: Orange County Jail

### REFERRAL

The defendant was referred for a confidential evaluation to conduct a psychosexual risk assessment. He was referred by his attorney, Tracey Kagan. He was previously evaluated by Dr. Danziger. For reasons found below, he was found to be at low risk for re-offense.

### TESTS AND PROCEDURES ADMINISTERED

1. Clinical Interview
2. Review of documents including indictment and Dr. Danziger's report
3. Mental Status Exam
4. Sexual Violence Risk Assessment – 20 (SVR-20)
5. Static-99R

### HISTORY AND BACKGROUND INFORMATION

According to documents reviewed by this examiner, he is charged with Production of Child Pornography and Enticement of a Minor to Engage in Sexual Activity. He denied any prior criminal history. He denied any significant medical history or prior head injuries. Regarding psychiatric issues, he reported a history of symptoms consistent with Adjustment Disorder and Panic Disorder. He reports feeling anxious, fearful, anxiety, and feelings of dread, occurring several times per week. He had brief counseling in first grade related to inappropriate encounters with a first grade teacher who inappropriately singled him out and checked his private parts in the bathroom while pulling his pants down. He denied any significant substance abuse issues or prior treatment.

Mr. Bonini is single. He was born in Venezuela and raised in the United States from the age of two by his biological mother and father and his maternal grandparents. He is an only child. He has been active in helping care for his grandfather and has had limited social relationships and has not formally dated. He denied any personal history of physical abuse. He reported a personal history of sexual abuse by his first grade teacher. He reported that she did inappropriate things, such as taking him to the restroom alone

Forensic Psychological Evaluation
Re: Bonini, Italo  Page 2

and checking his private areas and questioning whether his pants were dry.  She also publicly shamed him about his Halloween costume in front of his peers and adults leading to him being transferred to another class.  He denied any family history of mental health illness.  He denied any family history of substance abuse issues.

Mr. Bonini graduated from high school with a 3.4 GPA.  He reported being enrolled in ESAL classes in elementary school briefly and then in Honor's classes.  He reported being bullied while he was in school.  He earned his Bachelor of Science in 2023.  He was last employed in August of 2023 until February 2025 at Hunter's Creek Middle School teaching choir.  He does not receive Social Security Disability payments.

MENTAL STATUS AND BEHAVIORAL OBSERVATIONS

Mr. Italo Bonini is a 26-year-old male who was seen in an examination room at Orange County Jail.  He was oriented with respect to person, place, purpose, and time.  His thought processes were clear, logical, and goal directed.  His speech and language were within normal limits.  He denied any history of auditory or visual hallucinations, as well as any paranoid ideation.  He reported experiencing panic attacks and anxiety.  He denied any history of suicidal ideation, intent, or plan.  He denied any history of homicidal ideation, intent, or plan.  He reported experiencing a good appetite pattern.  He reported experiencing a decreased sleep pattern.  Based on observations during this interview and his academic and vocational background, his estimated intelligence level is likely in the average range.  Results from this evaluation can be viewed as a valid indicator of his current level of functioning.

RISK ASSESSMENT

The SVR-20 was used to conduct a risk assessment.  He has no history of prior sexual or violent offenses.  He has had a history of mental health issues including symptoms consistent with Adjustment Disorder, Generalized Anxiety and Panic Disorder.  He reported viewing adult pornography.  He reported that last summer in 2024 his father had to have gallbladder surgery and he experienced significant distress related to concerns about his father and financial issues.  Following that surgery he was chatting with people online through Discord and it led to inappropriate behaviors in which he engaged in the sharing of sexual behaviors while in a game video chat with minors.  He acknowledged behaviors consistent with a sexual deviance disorder including characteristics associated with pedophilic disorder.  He has struggled with his sexual identity and memories of the past encounters with his teacher when in 1st grade.  He has had minimal counseling to address these issues.  He reported being in a relationship from age fourteen to seventeen, but they rarely went out.  He has completed both high school and college courses and earned a BS.  He has been able to maintain stable employment.  He expressed responsibility for his actions and the desire to seek out mental health treatment.

The Static-99R is used to predict the risk of sexual re-offense.  Mr. Bonini scored a -2 and was found to be in the low risk range for re-offense.  Offenders with this same score

Forensic Psychological Evaluation
Re: Bonini, Italo  Page 3

from the routine samples have been found to sexually recidivate at 1.0% to 2.6% after 5 years.

## DIAGNOSTIC IMPRESSIONS

> Panic Disorder – 300.01
> Pedophilic Disorder – 302.2

## SUMMARY AND RECOMMENDATIONS

Mr. Italo Bonini is a 26-year-old male who was referred for a risk assessment.  Mr. Bonini has no history of prior sexual or violent offenses.  He has had a history of mental health symptoms consistent with the  diagnosis of Panic Disorder.  He has had limited normal dating experiences and presents as socially immature in his awareness of what would be considered to be normal age appropriate peer encounters such as dating and sexual involvement.  He presents with behaviors consistent with Pedophilic Disorder.  He has had a history of inappropriate exposure to being touched by an adult teacher and publicly shamed when he was in first grade.  He has had minimal treatment to address this trauma. He expressed responsibility for his actions and the desire to seek out mental health treatment.  Based on review of relevant risk factors and this examiner's interview, he is at low risk for re-offense.  It is recommended that he participate in mental health treatment and possible medication management to address his mental health issues and provide guidance in setting appropriate interpersonal and sexual boundaries.

Thank you for referring this client to me for psychological evaluation.

Valerie R. McClain, Psy.D.
Licensed Psychologist