# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA,**                    NO.: 6:25-CR-55-JSS-DCI

**VS**

**ITALO RAFAEL BRETT BONINI**

**DEFENDANT**

### _ADDITIONAL EXHIBITS FOR SENTENCING_

Defendant Italo Rafael Brett Bonini, through his undersigned attorney, respectfully submits these Exhibits for sentencing.

1. Defendant's Statement to Court and Victims
2. Orange County Corrections Division letter: Camila Gomez, Senior Corrections Officer
3. Certificate for Completion of Course: Moral Reconation Therapy Job Readiness
4. Additional Cases in Support of Downward Variance:

   a. **United States v. High, 23-106-1 (11th Circuit, North District of Florida)** (defendant went to trial on 2 counts of production of child pornography; defendant took secret videos of minor boys urinating and took screenshots of same: defendant scored 47 (43) life sentence ; Court sentenced defendant to 264 months).

   b. **United States v. Madsen, 17-12602 (11th Circuit, Middle District of Florida)** (defendant pled guilty to enticement and possession of child pornography; advisory range was life, sentenced to 210 months.

   c. **United States v. Eckhoff 11-10964 (11th Circuit, Middle District of Florida)** 2 counts of production, receipt and possession. Multiple minors, sexually explicit chats, guideline range life; defendant sentenced to 262 months.

   d. **United States v. Thornburg 18-10440 (11th Circuit, Middle District of Florida)** defendant convicted of attempting to knowingly induce or entice a minor to engage in sexual activity, attempting to transfer obscene material to minor under 16 and transporting child pornography, guideline range life; defendant sentenced 336 months

Respectfully submitted,

Tracey Kagan, Esquire
/s/ Tracey Kagan
Florida Bar: 0143472
501 N. Magnolia Avenue
Orlando Florida 32801
407-538-8885
traceykagan@traceykaganlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the undersigned electronically filed the foregoing with the Clerk of Cout (CM/ECF) by using the CM/ECF system which will send Notice of Electronic Filing to the following: Brandon Cruz, Assistant United States Attorney, this 15th day of October, 2025.

/s/Tracey Kagan
----------------------------------
Attorney for Defendant

## Allocution to the Court

Good day, My name is Italo Rafael Brett Bonini and I'd like to begin My allocution today by expressing thanks to the District Court for the opportunity to Speak. Despite My extensive background in teaching & performing Music, public Speaking is not my forte so I apologize in advance for My nerves or any Mistakes I may make today, I also apologize if I became emotional throughout this allocution as what I've done deeply saddens me. Firstly, I want to express My sincerest apologies to My Victims, I am extremely ashamed of what I've done to you and I am so sorry for putting you in such uncomfortable & disgusting Situations, experiencing My awful behavior. An apology will never be enough to cover or excuse My actions because what I've done is unforgivable, but an apology is the first step in Making amends and trying to make things right, and in order to be the better person I want to be, it's important to Me that I confess My Sins and truly repent.

When I think back to My Criminal activity or read the records of Chat-logs in My case, I cannot help but feel distraught, ashamed and completely disgusted with myself. I wonder, how could I do, say and ask Such awful things in presence of and with children? I hardly recognize the person Sending those Messages even though I know it's Me. It's an extreme departure from the Morals and Values I was raised with and it's absolutely shameful that I Sank into Such deplorable behavior.

Having been a Victim of Childhood Sexual Abuse, it's disappointing that I contributed to a harmful Cycle of Violence in Ways that were Selfish and gross. For that, I am truly Sorry and I am So Sorry that I perpetuated My gross behavior onto the Most vulnerable Members of our society. I refuse to Continue being the Monster that Committed these Crimes and I am Committed to Changing because I don't want to Contribute to anyone's pain or Suffering ever again.

2

Allocution Cont'd

During my time in custody, I decided to go on a Self-Improvement Journey of treatment through Courses in Moral Reconation Therapy & Victim Impact and I've reflected on the true impact of my actions. The harm my behavior causes is truly Concerning and I often pray that I have had minimal to no impact on my Victims. I truly want them to forget Me and What I've done to them So they may live peaceful, healthy and productive lives. No one deserves to live with a repetitive Memory of a traumatic experience. No one.

I deserve to be punished, there is no doubt in my Mind about it because every action has a Consequence, and I am ready to accept mine for engaging in this Shameful behavior With children. While Incarcerated, I am Committed to Continuing my Self-Improvement Journey by Seeking the help and Psychological treatment that I desperately Want and need so that this behavior is Never repeated again. I'm an educated person with a belief in life-long learning, So I know that I Will Continue to learn from this and grow from it So that I Can once again be a productive and law-abiding Member of Society. A completely Changed person for the better. The Court and everyone has my Word that I will do Whatever is Necessary and Whatever I am ordered to do in order to accomplish this goal.

In Conclusion, to my Victims, I am So Sorry for What I put you through. You deserve to be Safe online and I had absolutely No right to Create an Unsafe Environment for you. I truly Wish I Could go back in time and Stop myself from engaging in this behavior So that No Child Would be affected by my actions. Again, I am so Very Sorry and I promise that this Will Never happen again. May the Lord bless & Keep My Victims forever.

Thank you.



Orange County Corrections Department
**Community Corrections Division**
Central Intake | Inmate Programs | Pretrial Diversion | Pretrial Release Supervision | Probation

P.O. Box 4970, Orlando, Florida 32802-4970
Phone: 407-836-3000 • Fax: 407-836-3199 • ccd@ocfl.net

October 16, 2025

Status Report:
**RE: Brettbonini, Italo / Booking #25003473**
**USMS# 59304-511**

To Whom It May Concern:

The purpose of this letter is to acknowledge Italo Brettbonini booking number 25003473. Italo Brettbonini is an active participant in the Life Skills Program held at Orange County Corrections. Mr. Brettbonini has been an active participant since April 01st, 2025.

Mr. Brettbonini has received a completion certificate for the following Moral Reconation Therapy-MRT courses:

- Thinking for Good on 05/13/2025
- Coping with Anger on 06/10/2025
- Untangling Relationship on 07/22/2025
- Getting a Job on 08/26/2025
- Job Readiness on 10/07/2025

Mr. Brettbonini has successfully completed Five of the Five Moral Reconation Therapy curriculums. He is currently working on the final curriculum, Victim Impact. He started the course on September 07, 2025, with an expected completion date of November 25, 2025.

Moral Reconation Therapy-MRT is an effective systematic, cognitive-behavioral approach that treats a wide range of issues including substance abuse, domestic violence, trauma, parenting, job skills, and other issues. The Victim Impact Curriculum requires a unique learning environment to enable the "power of the personal story" and its impact on offender thinking and behavior to unfold.

In the event additional information is needed I can be reached at 407-836-3058 or Camila.Gomez@ocfl.net.

Respectfully,

Camila Gomez
Senior Community Corrections Officer
Life Skills Program Coordinator

# Orange County Corrections Department
## Community Corrections Division

*Certificate of Completion presented to*

# Italo Rafael Brettbonini

*For the successful completion of*

# Moral Reconation Therapy
# Job Readiness

*This Moral Reconation Therapy curriculum focuses on identifying positive employment habits and utilizing them to get and keep a job.*

October 7, 2025

C. Gomez, Senior Community Corrections Officer



printed by traceykagan@yahoo.com (Bar edition)

# United States v. High

**Docket Number:** 23-10601

**Decision Date:** 09 July 2024

**Citation:** United States v. High, 23-10601 (11th Cir. Jul 09, 2024)

**Parties:** UNITED STATES OF AMERICA, Plaintiff-Appellee, v. JONATHAN HIGH, Defendant-Appellant.

**Court:** U.S. Court of Appeals — Eleventh Circuit

1

**UNITED STATES OF AMERICA, Plaintiff-Appellee, v. JONATHAN HIGH, Defendant-Appellant.**

**No. 23-10601**

**United States Court of Appeals, Eleventh Circuit**

**July 9, 2024**

How likely is it that you would recommend
vLex to a friend or colleague?

0  1  2  3  4  5  6  7  8  9  10

**0** - Not at all likely          **10** - Extremely likely

ourt for the Northern District of Florida D.C.
Before LUCK, BRASHER, and ABUDU,                  2

PER CURIAM:

Jonathan **High** secretly recorded two minor boys urinating in a church bathroom. He appeals his two convictions for production of child pornography, arguing that the recordings do not depict sexually explicit conduct. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Florida Department of Law Enforcement received a tip that an internet user with a certain telephone number and email address uploaded videos and images depicting sexual exploitation of minor boys to an online storage account. The department received records showing that the telephone number was associated with **High**'s mother and **High**'s Quality Services, the family business that employed **High**. A search of the online storage account uncovered numerous photos and videos of the sexual exploitation of minor boys.

Within this account, there were recordings uploaded from a cell phone rather than downloaded from the internet. Specifically, the account contained a video of a minor boy, approximately ten to eleven years old and wearing a grey polo shirt ("Minor Male 1"), standing and then urinating in a public bathroom stall. There was also a screenshot of the video at the exact instance Minor Male 1 is urinating. And there was another screenshot of another video of a different minor boy, approximately ten to eleven years old ("Minor Male 2"), urinating in the same public bathroom. *3                3

The department obtained an arrest warrant for **High** and arrested him at his home. **High** was read his *Miranda* rights and confessed that the phone number and email address linked to the online storage account were his, the bathroom depicted in the recordings was located at his church, and Minor Male 1 attended his church.

A federal grand jury indicted **High** on three counts. Count one was the production of child pornography relating to Minor Male 1. Count two was the production of child pornography relating to Minor Male 2. Both counts were violations of 18 U.S.C. sections 2251(a) and (e). Count three was for the possession of child pornography in violation of sections 2252A(a)(5)(B) and (b)(2). **High** pleaded guilty to count three and opted for a bench trial on counts one and two.

Before trial, **High** stipulated that he owned the online storage account, he downloaded and stored the videos and photos of the sexual exploitation of minor boys from the internet, he owned the two cell phones, and he took the videos and screenshots of Minor Male 1 and Minor Male 2. However, **High** did not stipulate that the videos and screenshots of Minor Male 1 and Minor Male 2 depicted sexually explicit conduct, leaving this single issue for the bench trial.

At the bench trial, two investigators from the department testified. Special Agent Aida Limongi explained that **High**'s online storage account contained numerous videos and images of the sexual exploitation of minor boys, including depictions of minor boys *4 4 performing sex acts in the bathroom. And Agent Limongi testified that **High** created the videos and screenshots of Minor Male 1 and Minor Male 2. Digital Forensic Consultant Lee Pierce explained that **High** created the screenshots of the videos of Minor Male 1 and Minor Male 2 using computer software and placed them in a separate folder with a collection of other child pornography of minor boys.

Following this testimony, the government rested, and **High** moved for a judgment of acquittal, arguing that he did not use Minor Male 1 and Minor Male 2 to engage in sexually explicit conduct as required by section 2251 because the boys were not exhibiting themselves in a lustful manner. The district court denied the motion, reasoning that **High** used the boys in sexually explicit conduct because the videos and screenshots contained a lascivious exhibition of the boys' genitals. In the district court's view, the exhibitions were lascivious because **High** had an interest in minor boys' genitals, he deliberately took videos of Minor Male 1 and Minor Male 2 at a time he knew their genitals would be exposed, he took screenshots of the videos at the exact time of urination, and he placed these screenshots with other images of similar child pornography.

As the factfinder, the district court found **High** guilty on counts one and two. **High** was sentenced to 264 months' imprisonment for counts one and two and 120 months for count three. **High** appeals the denial of his motion for judgment of acquittal. *5        5

## STANDARD OF REVIEW

We review de novo the denial of a motion for judgment of acquittal, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the factfinder's verdict. *See **United States** v. Martin*, 803 F.3d

581, 587 (11th Cir. 2015). If "any reasonable construction of the evidence" would permit the factfinder "to find the defendant guilty beyond a reasonable doubt," we must affirm. **United** *States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (citation omitted).

# DISCUSSION

High argues that he did not use Minor Male 1 and Minor Male 2 for sexually explicit conduct as required by section 2251(a) because the recordings do not depict lascivious exhibitions of the genitals. In his view, because the recordings depict innocuous conduct, they cannot be lascivious. Thus, he contends the district court erred in denying his motion for judgment of acquittal. We disagree.

Section 2251(a) makes it unlawful to employ or use a child to engage in "sexually explicit conduct" for the purpose of producing any visual depiction of that conduct using materials that have traveled in interstate commerce. 18 U.S.C. § 2251(a). "[S]exually explicit conduct" includes the "lascivious exhibition of the genitals or pubic area of any person." *Id.* § 2256(2)(A).

A "lascivious exhibition," we have found, is one that "potentially excites sexual desires or is salacious." *6 *United States v. Grzybowicz*, 747 F.3d 1296, 1306 (11th Cir. 2014) 6 (cleaned up). And, critically here, "a lascivious exhibition may be created by an individual who surreptitiously videos or photographs a minor and later captures or edits a depiction, even when the original depiction is one of an innocent child acting innocently." *United States v. Holmes*, 814 F.3d 1246, 1248, 1252 (11th Cir. 2016).

In *Holmes*, for example, the defendant secretly recorded nude images of his teenage stepdaughter while she used the bathroom. *Id.* at 1248. On appeal, the defendant argued that he did not produce child pornography because the images were not "lascivious" in that they depicted "mere nudity" as his stepdaughter "per-form[ed] normal everyday activities." *Id.* at 1251. We rejected the defendant's argument and concluded that the images depicted "lascivious exhibition[s] of the genitals." *Id.* at 1252.

The courts, we explained, "look[] to the intent of the producer or editor of an image" to determine whether that image depicts a lascivious exhibition. *Id.* (citation omitted). The producer's intent can be discerned by looking to his conduct in producing or editing the images. *Id.* Specifically, where the producer of an image uses "freeze-

framing" or zooming in on the genitals, it conveys an "intent to elicit a sexual response in the viewer." *Id.* (citing *United States v. Horn*, 187 F.3d 781, 790 (8th Cir. 1999)). Thus, we held that the defendant's "placement of the cameras in the bathroom where his stepdaughter was most likely to be videoed while nude, his extensive focus on videoing and capturing images of her pubic area, the angle of the camera set up, and his editing of the *7 videos at issue . . . was sufficient to create a lascivious exhibition of the genitals or pubic area."[1] *Id.*    7

Applied here, High engaged in the "lascivious exhibition of the genitals" when he recorded, edited, and stored the images of Minor Male 1 and Minor Male 2. § 2256(2)(A). High secretly positioned a camera to record videos of the minor boys as they urinated in a bathroom. He then created screenshots of the boys when their genitals were exposed. And he stored these images and videos with other child pornography, which included other images and videos of minor boys performing sex acts in bathrooms. *See United States v. Smith*, 459 F.3d 1276, 1296 n.17 (11th Cir. 2006) ("That the *8 photographs of the victim were found with other sexually explicit photographs could make it more likely that their purpose was to elicit a sexual response."). Thus, the evidence, when viewed in the light most favorable to the government, was sufficient to find that High recorded the videos, and specifically made the screenshots, in order to engage in sexually explicit conduct in violation of section 2251(a).    8

Pushing back, High responds that *Holmes* does not apply for two reasons. First, he argues that *Holmes* is factually distinguishable because, unlike the defendant's editing in *Holmes,* he did not use "extensive focusing" on the minor boys' genitals. But High secretly recorded minors in a bathroom when he knew their genitals would be exposed and then edited the recording by creating screenshots of the exact moments in which their genitals were exposed. This kind of "freeze-framing," we said, "can create an image intended to elicit a sexual response in the viewer." *See Holmes*, 814 F.3d at 1252.

Second, High argues that the Supreme Court's decision in *United States v. Williams*, 553 U.S. 285 (2008) compels us to adopt the D.C. Circuit's decision in *United States v. Hillie*, 39 F.4th 674 (D.C. Cir. 2022), which held that videos depicting a minor merely engaged in "ordinary grooming activities" cannot fall within the definition of "lascivious exhibition of the genitals" because the "conduct depicted in the videos must consist of her displaying her anus, genitalia, or pubic area in a lustful manner that connotes the commission of a sexual act." But *Holmes* instructed courts to look to *9 the intent of    9

the producer to determine if an exhibition was lascivious, and directly rejected a
requirement that the child must be depicted in a lustful manner as "[s]uch an
interpretation would pervert both the language and the logic of the legislation and the
case law." 814 F.3d at 1251-52 (quoting *United States v Wolf,* 890 F.2d 241, 246 (10th
Cir. 1989)). Applying *Holmes,* as we must, we conclude that the district court did not
err in denying High's motion for judgment of acquittal.

**AFFIRMED.**

---------

[1] Our court's pattern jury instruction is consistent with *Holmes.* Specifically, it instructs a
jury to consider the following factors to determine whether an exhibition is lascivious:

> (1) the overall content of the material; (2) whether the focal point of the visual
> depiction is on the minor's genitalia or pubic area; (3) whether the setting of the visual
> depiction is sexually inviting or suggestive- for example, in a location or pose
> associated with sexual activity; (4) whether the minor appears to be displayed in an
> unnatural pose or in inappropriate attire; (5) whether the minor is partially clothed or
> nude; (6) whether the depiction appears to convey sexual coyness or an apparent
> willingness to engage in sexual activity; and (7) whether the depiction appears to have
> been designed to elicit a sexual response in the viewer.

*See* 11th Cir. Crim. Pattern Jury Instructions O83.4A (numerals added). As the district court
found, these factors also support a finding that the videos and screenshots High took of
Minor Male 1 and Minor Male 2 were lascivious exhibitions.

---------

[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

---

No. 23-10601

Non-Argument Calendar

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JONATHAN HIGH,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:22-cr-00020-AW-MAF-1

---

2                    Opinion of the Court                    23-10601

Before LUCK, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Jonathan High secretly recorded two minor boys urinating in a church bathroom. He appeals his two convictions for production of child pornography, arguing that the recordings do not depict sexually explicit conduct. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Florida Department of Law Enforcement received a tip that an internet user with a certain telephone number and email address uploaded videos and images depicting sexual exploitation of minor boys to an online storage account. The department received records showing that the telephone number was associated with High's mother and High's Quality Services, the family business that employed High. A search of the online storage account uncovered numerous photos and videos of the sexual exploitation of minor boys.

Within this account, there were recordings uploaded from a cell phone rather than downloaded from the internet. Specifically, the account contained a video of a minor boy, approximately ten to eleven years old and wearing a grey polo shirt ("Minor Male 1"), standing and then urinating in a public bathroom stall. There was also a screenshot of the video at the exact instance Minor Male 1 is urinating. And there was another screenshot of another video of a different minor boy, approximately ten to eleven years old ("Minor Male 2"), urinating in the same public bathroom.

The department obtained an arrest warrant for High and arrested him at his home. High was read his *Miranda* rights and confessed that the phone number and email address linked to the online storage account were his, the bathroom depicted in the recordings was located at his church, and Minor Male 1 attended his church.

A federal grand jury indicted High on three counts. Count one was the production of child pornography relating to Minor Male 1. Count two was the production of child pornography relating to Minor Male 2. Both counts were violations of 18 U.S.C. sections 2251(a) and (e). Count three was for the possession of child pornography in violation of sections 2252A(a)(5)(B) and (b)(2). High pleaded guilty to count three and opted for a bench trial on counts one and two.

Before trial, High stipulated that he owned the online storage account, he downloaded and stored the videos and photos of the sexual exploitation of minor boys from the internet, he owned the two cell phones, and he took the videos and screenshots of Minor Male 1 and Minor Male 2. However, High did not stipulate that the videos and screenshots of Minor Male 1 and Minor Male 2 depicted sexually explicit conduct, leaving this single issue for the bench trial.

At the bench trial, two investigators from the department testified. Special Agent Aida Limongi explained that High's online storage account contained numerous videos and images of the sexual exploitation of minor boys, including depictions of minor boys

performing sex acts in the bathroom. And Agent Limongi testified that High created the videos and screenshots of Minor Male 1 and Minor Male 2. Digital Forensic Consultant Lee Pierce explained that High created the screenshots of the videos of Minor Male 1 and Minor Male 2 using computer software and placed them in a separate folder with a collection of other child pornography of minor boys.

Following this testimony, the government rested, and High moved for a judgment of acquittal, arguing that he did not use Minor Male 1 and Minor Male 2 to engage in sexually explicit conduct as required by section 2251 because the boys were not exhibiting themselves in a lustful manner. The district court denied the motion, reasoning that High used the boys in sexually explicit conduct because the videos and screenshots contained a lascivious exhibition of the boys' genitals. In the district court's view, the exhibitions were lascivious because High had an interest in minor boys' genitals, he deliberately took videos of Minor Male 1 and Minor Male 2 at a time he knew their genitals would be exposed, he took screenshots of the videos at the exact time of urination, and he placed these screenshots with other images of similar child pornography.

As the factfinder, the district court found High guilty on counts one and two. High was sentenced to 264 months' imprisonment for counts one and two and 120 months for count three. High appeals the denial of his motion for judgment of acquittal.

## STANDARD OF REVIEW

We review de novo the denial of a motion for judgment of acquittal, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the factfinder's verdict. *See United States v. Martin*, 803 F.3d 581, 587 (11th Cir. 2015). If "any reasonable construction of the evidence" would permit the factfinder "to find the defendant guilty beyond a reasonable doubt," we must affirm. *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (citation omitted).

## DISCUSSION

High argues that he did not use Minor Male 1 and Minor Male 2 for sexually explicit conduct as required by section 2251(a) because the recordings do not depict lascivious exhibitions of the genitals. In his view, because the recordings depict innocuous conduct, they cannot be lascivious. Thus, he contends the district court erred in denying his motion for judgment of acquittal. We disagree.

Section 2251(a) makes it unlawful to employ or use a child to engage in "sexually explicit conduct" for the purpose of producing any visual depiction of that conduct using materials that have traveled in interstate commerce. 18 U.S.C. § 2251(a). "[S]exually explicit conduct" includes the "lascivious exhibition of the genitals or pubic area of any person." *Id.* § 2256(2)(A).

A "lascivious exhibition," we have found, is one that "potentially excites sexual desires or is salacious." *United States v.*

6                    Opinion of the Court                    23-10601

*Grzybowicz*, 747 F.3d 1296, 1306 (11th Cir. 2014) (cleaned up). And, critically here, "a lascivious exhibition may be created by an individual who surreptitiously videos or photographs a minor and later captures or edits a depiction, even when the original depiction is one of an innocent child acting innocently." *United States v. Holmes*, 814 F.3d 1246, 1248, 1252 (11th Cir. 2016).

In *Holmes*, for example, the defendant secretly recorded nude images of his teenage stepdaughter while she used the bathroom. *Id*. at 1248. On appeal, the defendant argued that he did not produce child pornography because the images were not "lascivious" in that they depicted "mere nudity" as his stepdaughter "perform[ed] normal everyday activities." *Id*. at 1251. We rejected the defendant's argument and concluded that the images depicted "lascivious exhibition[s] of the genitals." *Id*. at 1252.

The courts, we explained, "look[] to the intent of the producer or editor of an image" to determine whether that image depicts a lascivious exhibition. *Id*. (citation omitted). The producer's intent can be discerned by looking to his conduct in producing or editing the images. *Id*. Specifically, where the producer of an image uses "freeze-framing" or zooming in on the genitals, it conveys an "intent to elicit a sexual response in the viewer." *Id*. (citing *United States v. Horn*, 187 F.3d 781, 790 (8th Cir. 1999)). Thus, we held that the defendant's "placement of the cameras in the bathroom where his stepdaughter was most likely to be videoed while nude, his extensive focus on videoing and capturing images of her pubic area, the angle of the camera set up, and his editing of the

videos at issue . . . was sufficient to create a lascivious exhibition of the genitals or pubic area."[1] *Id.*

Applied here, High engaged in the "lascivious exhibition of the genitals" when he recorded, edited, and stored the images of Minor Male 1 and Minor Male 2. § 2256(2)(A). High secretly positioned a camera to record videos of the minor boys as they urinated in a bathroom. He then created screenshots of the boys when their genitals were exposed. And he stored these images and videos with other child pornography, which included other images and videos of minor boys performing sex acts in bathrooms. *See United States v. Smith*, 459 F.3d 1276, 1296 n.17 (11th Cir. 2006) ("That the

---

[1] Our court's pattern jury instruction is consistent with *Holmes*. Specifically, it instructs a jury to consider the following factors to determine whether an exhibition is lascivious:

> (1) the overall content of the material; (2) whether the focal point of the visual depiction is on the minor's genitalia or pubic area; (3) whether the setting of the visual depiction is sexually inviting or suggestive— for example, in a location or pose associated with sexual activity; (4) whether the minor appears to be displayed in an unnatural pose or in inappropriate attire; (5) whether the minor is partially clothed or nude; (6) whether the depiction appears to convey sexual coyness or an apparent willingness to engage in sexual activity; and (7) whether the depiction appears to have been designed to elicit a sexual response in the viewer.

*See* 11th Cir. Crim. Pattern Jury Instructions O83.4A (numerals added). As the district court found, these factors also support a finding that the videos and screenshots High took of Minor Male 1 and Minor Male 2 were lascivious exhibitions.

photographs of the victim were found with other sexually explicit photographs could make it more likely that their purpose was to elicit a sexual response."). Thus, the evidence, when viewed in the light most favorable to the government, was sufficient to find that High recorded the videos, and specifically made the screenshots, in order to engage in sexually explicit conduct in violation of section 2251(a).

Pushing back, High responds that *Holmes* does not apply for two reasons. First, he argues that *Holmes* is factually distinguishable because, unlike the defendant's editing in *Holmes*, he did not use "extensive focusing" on the minor boys' genitals. But High secretly recorded minors in a bathroom when he knew their genitals would be exposed and then edited the recording by creating screenshots of the exact moments in which their genitals were exposed. This kind of "freeze-framing," we said, "can create an image intended to elicit a sexual response in the viewer." *See Holmes*, 814 F.3d at 1252.

Second, High argues that the Supreme Court's decision in *United States v. Williams*, 553 U.S. 285 (2008) compels us to adopt the D.C. Circuit's decision in *United States v. Hillie*, 39 F.4th 674 (D.C. Cir. 2022), which held that videos depicting a minor merely engaged in "ordinary grooming activities" cannot fall within the definition of "lascivious exhibition of the genitals" because the "conduct depicted in the videos must consist of her displaying her anus, genitalia, or pubic area in a lustful manner that connotes the commission of a sexual act." But *Holmes* instructed courts to look to

23-10601              Opinion of the Court                    9

the intent of the producer to determine if an exhibition was lasciv-
ious, and directly rejected a requirement that the child must be de-
picted in a lustful manner as "[s]uch an interpretation would per-
vert both the language and the logic of the legislation and the case
law." 814 F.3d at 1251–52 (quoting *United States v. Wolf*, 890 F.2d
241, 246 (10th Cir. 1989)). Applying *Holmes*, as we must, we con-
clude that the district court did not err in denying High's motion
for judgment of acquittal.

**AFFIRMED.**

printed by traceykagan@yahoo.com (Bar edition)

# United States v. Madsen

**Decision Date:** 13 September 2018

**Docket Number:** No. 17-12602 , 17-12602

**Citation:** United States v. Madsen, No. 17-12602 (11th Cir. Sep 13, 2018)

**Parties:** UNITED STATES OF AMERICA, Plaintiff - Appellee, v. NATHAN A. MADSEN, Defendant - Appellant.

**Court:** U.S. Court of Appeals — Eleventh Circuit

## UNITED STATES OF AMERICA, Plaintiff - Appellee, v. NATHAN A. MADSEN, Defendant - Appellant.

## No. 17-12602

## UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

### September 13, 2018

[DO NOT PUBLISH]

How likely is it that you would recommend
vLex to a friend or colleague?

-1

0  1  2  3  4  5  6  7  8  9  10

**0** - Not at all likely          **10** - Extremely likely

ourt for the Middle District of Florida

AUM, Circuit Judges.

PER CURIAM:

Nathan **Madsen** pled guilty to enticement of a minor to engage in sexual activity and possession of child pornography. In exchange for his guilty plea, the *2 government dismissed the original indictment and agreed not to pursue other charges related to his conduct. Mr. **Madsen**'s written plea agreement included a sentence appeal waiver and permitted an appeal only if his sentence exceeded the guideline range as calculated by the district court, exceeded the statutory maximum sentence, violated the Eighth Amendment, or if the government appealed.

At sentencing, the district court heard testimony and arguments from the parties, including a victim impact statement from Mr. **Madsen**'s minor victim in the child pornography offense. The district court calculated Mr. **Madsen**'s advisory sentencing guideline range at life imprisonment, but, after considering the testimony and 18 U.S.C. § 3553(a) factors, varied downward and imposed a total sentence of 210 months' imprisonment.

Mr. **Madsen** raises two issues on appeal. First, he contends that his due process rights were violated by the district court's admission and consideration of the victim's impact statement. Second, he argues that he received ineffective assistance of counsel. After careful review, we dismiss his appeal as to the due process claim because it is barred by his sentence appeal waiver. We decline to consider his ineffective assistance of counsel claim because the record is not sufficiently developed on direct appeal. *3

# I

We review the validity of a sentence appeal waiver *de novo*. *See* **United States** *v. DiFalco*, 837 F.3d 1207, 1215 (11th Cir. 2016). Valid waivers must be made knowingly and voluntarily, so we require that the government establish either that "(1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *Id*. Mr. **Madsen** acknowledges that he "signed a valid, enforceable appeal waiver," Initial Br. at 26, and we agree. The record demonstrates that the district court explained and specifically

questioned Mr. **Madsen** concerning the sentence appeal waiver and that Mr. **Madsen** indicated that he understood he was forfeiting his right to appeal, except in limited circumstances not implicated here. *See* D.E. 115 at 33-34.

Despite the valid waiver, Mr. **Madsen** contends that he may still appeal his sentence because his due process rights were violated when the district court allowed the prosecution to read a statement written by Mr. **Madsen**'s minor victim. Mr. **Madsen** is correct that his "waiver of the right to appeal his sentence does not mean [ ] that appellate review is completely unavailable." *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993). We have recognized, for example, that a defendant may appeal his sentence if it was based on a constitutionally *4 impermissible factor such as race,  4 *id.* at 1350 n.18, or in "extreme circumstances" such as a sentence to "public flogging." *United States v. Howle*, 166 F.3d 1166, 1169 n.5 (11th Cir. 1999).

Unfortunately for Mr. **Madsen**, his due process argument does not raise a constitutionally impermissible factor like race or an extreme circumstance like public flogging. *See generally Payne v. Tennessee*, 501 U.S. 808, 827 (1991) (holding that admission of victim impact evidence at death penalty sentencing phase does not *per se* violate the Eighth Amendment); *United States v. Horsfall*, 552 F.3d 1275, 1284 (11th Cir. 2008) (finding no plain error in admission of victim impact statement in child pornography case). In fact, we have held that such appeal waivers may "bargain away [the] right to raise constitutional issues[.]" *United States v. Bascomb*, 451 F.3d 1292, 1297 (11th Cir. 2006). And, we have dismissed appeals raising due process concerns due to these waivers. *See United States v. Rubbo*, 396 F.3d 1330, 1335 (11th Cir. 2005) (dismissing appeal due to waiver that included Due Process and Sixth Amendment claims under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny). Mr. Madsen knowingly and voluntarily waived his right to appeal his sentence, and that waiver included his due process claim. Accordingly, we dismiss his appeal on this issue. *5                                                                                          5

## II

Next, we turn to Mr. Madsen's ineffective assistance of counsel claim. "We will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record."

*United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010). Mr. Madsen, to his credit, recognizes this usual limitation. Nevertheless, he argues that the record is sufficiently developed in this case. We disagree.

He points to two parts of the record to support his argument. First, he contends that one of his responses at the sentencing hearing "supports that he did not appreciate the significance of his plea agreement, or understand how the sentencing guidelines appl[ied] to his case." Initial Br. at 34. Second, he points to his "decision to plead guilty to a life imprisonment range," which he describes as "confounding." *See id.* at 35. From these two facts, Mr. Madsen asks us to hypothesize, or presume, that his counsel was ineffective.

The problem with this argument is that, although it points to allegedly-ineffective acts in the record, it does not shed light on his counsel's strategy or whether the alleged errors were prejudicial. These are Mr. Madsen's burden to prove. *See Massaro v. United States*, 538 U.S. 500, 505 (2003) ("Under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that [*6] the error was prejudicial."). Even if we accepted his argument that the record showed "seemingly unusual or misguided action by counsel," we do not know whether there was "a sound strategic motive" or whether that action "was taken because the counsel's alternatives were even worse." *See id.* For these reasons, "[t]he preferred means for deciding a claim of ineffective assistance of counsel is through a 28 U.S.C. § 2255 motion[.]" *Patterson*, 595 F.3d at 1328. Through this procedure, Mr. Madsen may develop an appropriate record to support his claim. "We do not suggest that [Mr. Madsen's] counsel was ineffective, but [he] may raise his claim in a 28 U.S.C. § 2255 motion if he so chooses and timely files it." *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).

# III

In sum, we dismiss Mr. Madsen's appeal in part and affirm the judgment of the district court.

**APPEAL DISMISSED IN PART; AFFIRMED IN PART.**

printed by traceykagan@yahoo.com (Bar edition)

# United States v. Eckhoff

**Decision Date:** 10 November 2011

**Docket Number:** D.C. Docket No. 8:10-cr-00101-EAK-EAJ-1 , No. 11-10964 , 11-10964

**Citation:** United States v. Eckhoff, D.C. Docket No. 8:10-cr-00101-EAK-EAJ-1, No. 11-10964 (11th Cir. Nov 10, 2011)

**Parties:** UNITED STATES OF AMERICA, Plaintiff-Appellee, v. RICHARD ECKHOFF, a.k.a. Richard Elias Eckhoff, Defendant-Appellant.

**Court:** U.S. Court of Appeals — Eleventh Circuit

## UNITED STATES OF AMERICA, Plaintiff-Appellee,

## v.RICHARD ECKHOFF, a.k.a. Richard Elias Eckhoff, Defendant-Appellant.

## No. 11-10964

## D.C. Docket No. 8:10-cr-00101-EAK-EAJ-1

## UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

er 10, 2011



How likely is it that you would recommend vLex to a friend or colleague?

0 1 2 3 4 5 6 7 8 9 10

**0** - Not at all likely          **10** - Extremely likely

Appeal from the **United States** District Court
for the Middle District of Florida

Before MARCUS, PRYOR and MARTIN, Circuit Judges.

PER CURIAM: *2                                                                                  2

Richard **Eckhoff** appeals his sentence of 262 months of imprisonment for two counts of producing child pornography, 18 U.S.C. § 2251(a), one count of receiving child pornography, id. § 2252(a)(2), and one count of possessing child pornography, id. § 2252(a)(4)(B). **Eckhoff** argues that his sentence is unreasonable. We affirm.

The district court did not abuse its discretion by sentencing **Eckhoff** to a term of imprisonment at the low end of the advisory guideline range. **Eckhoff** persuaded a 16 year old girl to transmit repeatedly live video footage of her naked body. Later, **Eckhoff** attempted to convince the girl to delete from her computer the messages and pictures sent from **Eckhoff** and to tell federal investigators that **Eckhoff** had not seen her naked. **Eckhoff** also induced two sisters, when they were between the ages of 15 and 17, each to email photographs of themselves in sexually explicit poses and to participate in sexually explicit online conversations. Investigators discovered on **Eckhoff**'s computer more than 600 images of child pornography, including images that **Eckhoff** had downloaded from a child pornography website that portrayed children in bondage and being assaulted sexually. At sentencing, the district court acknowledged **Eckhoff**'s lack of prior criminal record, his "immaturity" and "difficulty in having social relationships," and the care he had provided for his parents, but the district court found those *3 factors were outweighed by **Eckhoff**'s decision to           3
"manipulate" for years his victims for his "own sexual gratification" and "literally destroy . . . their lives" to the point that one victim "[c]onsidered suicide." The district court reasonably determined that a sentence of 262 months of imprisonment was necessary to address the seriousness of **Eckhoff**'s offenses, provide adequate punishment, protect the public, and deter future similar crimes. See 18 U.S.C. § 3553(a). We reject as preposterous **Eckhoff**'s argument that he deserved a lesser sentence because he "[n]ever me[t] with any of [his] victims in person[] or . . . [had] sex with any of the alleged victims." **Eckhoff**'s sentence is reasonable.

We **AFFIRM Eckhoff**'s sentence.

printed by traceykagan@yahoo.com (Bar edition)

# United States v. Thornburg

**Decision Date:** 01 February 2019

**Docket Number:** No. 18-10440 , 18-10440

**Citation:** United States v. Thornburg, No. 18-10440 (11th Cir. Feb 01, 2019)

**Parties:** UNITED STATES OF AMERICA, Plaintiff-Appellee, v. CLAYTON JUNIOR THORNBURG, Defendant-Appellant.

**Court:** U.S. Court of Appeals — Eleventh Circuit

## UNITED STATES OF AMERICA, Plaintiff-Appellee, v. CLAYTON JUNIOR THORNBURG, Defendant-Appellant.

## No. 18-10440

## UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

## February 1, 2019

[DO NOT PUBLISH]

How likely is it that you would recommend
vLex to a friend or colleague?

0   1   2   3   4   5   6   7   8   9   10

**0 - Not at all likely**          **10 - Extremely likely**

-1

ourt for the Middle District of Florida

rcuit Judges.

PER CURIAM:

After a bench trial, Clayton **Thornburg** was convicted of attempting to knowingly induce or entice a minor to engage in sexual activity, in violation of 18 *2 U.S.C. § 2422(b), attempting to transfer obscene material to a minor under 16 years of age, in violation of 18 U.S.C. § 1470, committing a felony offense involving a minor while required to register as a sex offender, in violation of 18 U.S.C. § 2260A, and transporting child pornography, in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1). He is serving a total 336-month sentence.

On appeal, **Thornburg** challenges his conviction for attempting to entice a minor to engage in sexual activity. He argues that the government did not produce sufficient evidence to prove that he intentionally took a substantial step toward the commission of his offense. **Thornburg** also challenges the district court's application of a two-level enhancement under U.S.S.G. § 2G2.2(b)(6) for his use of a computer in calculating his offense level for transporting child pornography. He contends that, because almost all child pornography cases involve the use of a computer, the base offense level took such use into account.

After careful and thorough review, we affirm **Thornburg**'s convictions and sentences. We first recount the relevant trial evidence and procedural history in this case.

## I. TRIAL EVIDENCE

The charges arose from **Thornburg**'s online communications with an undercover agent posing as a minor from August through November of 2015. *3 Department of Homeland Security Investigations Special Agent Tavey Garcia established a fictitious online identity of a 13-year-old girl. Agent Garcia used that identity on online platforms that are known by law enforcement to be prolific with individuals who have a sexual interest in children, including MBuzzy.com, a social media chat application accessible through mobile devices and the internet, and Kik Messenger, a chat application for mobile devices.

In connection with this case, Agent Garcia accessed MBuzzy.com, and in her MBuzzy profile, Agent Garcia identified herself as "JMK," a 13-year-old girl in middle school. On August 6, 2015, someone using the profile name "loves2lickpussi," who was later

determined to be **Thornburg**, contacted JMK on MBuzzy.com. **Thornburg**'s profile indicated that he was a 43-year-old male who was "feeling naughty."

During **Thornburg**'s and JMK's initial conversations on MBuzzy.com in August 2015, JMK said that she was 13 years old and lived in Florida. When **Thornburg** found out that JMK was 13, JMK offered to stop chatting, but **Thornburg** stated that he was still willing to chat with her. **Thornburg** told JMK that he was 43 years old, "old enough to be [her] daddy."

**Thornburg** suggested chatting with JMK on Kik Messenger, and JMK said that she did not like to give out her Kik username because Kik users must be 18, [*4] and she previously had been kicked off Kik for being underaged. **Thornburg** assured JMK that she was not the first underaged girl he had talked to on Kik and that he would "never report and turn anybody in for any reason." He also warned JMK that she might not like his Kik username because it might be "too naughty" for her. **Thornburg** revealed that his Kik username was "luv2beurdaddi2."

Agent Garcia viewed **Thornburg**'s profile on Kik, saw that he claimed his name was "Sam Thomas," and began chatting with him on Kik. **Thornburg** viewed JMK's profile, which included a picture, and said to her: "Wow. Damn. You're freaking gorgeous. So is that a good thing I'm old enough to be your dad?"

As the Kik conversations continued in August 2015, the messages became very graphic and sexual in nature. **Thornburg** expressed his desire to be with JMK and his physical attraction to her, stating that "I am liking the fact you're young more and more, babe." **Thornburg** then began to describe sex acts that he wanted to do with JMK. **Thornburg** stated "[y]ou're going to be fun to be with in and out of bed," and JMK asked what he was going to do with her. **Thornburg** stated that he would kiss her all over her body and hoped that they would make love. JMK asked if that would hurt, and **Thornburg** replied, "[i]f you let me inside you the first time, yes, it's going to hurt some, but it will be gentle—I'm sorry—but I'll be gentle as I can be." **Thornburg** stated that he could not wait to "taste" JMK and to [*5] lick her "boobs and vagina." Thornburg explained what that would feel like for JMK, and he asked her if she wanted to feel his penis and have him touch her naked body. Thornburg asked to see her naked body, but JMK claimed that her camera was broken. Thornburg asked JMK about calling him "daddy" and explained that some girls liked to do that during sex.

During September 2015, the messages continued with JMK saying that they probably should not be together because they could get in trouble and because Thornburg had work. Thornburg replied that he was "not worried about the trouble part." He told JMK that "[t]he funny part is that it doesn't have to be anything sexual and you have grown on me more and more every time we've talked," and apologized for not contacting her more frequently. JMK replied, "Look. I'm 13-and-a-half. I can tell when I'm getting played, you know?" but Thornburg assured her that he was not playing her.

On September 28, 2015, Thornburg began sending JMK pornographic videos and images, the first being a video of oral sex. The video was accompanied by a message from Thornburg expressing his desire to engage in oral sex with JMK but that he would have to wait until he saw her.

On October 7, 2015, Thornburg asked JMK whether she liked the size of his penis, and she replied that she did not know and would have to trust him. [*6] Thornburg then sent a picture of an erect penis, which he claimed was a photo of himself. JMK expressed concern about the size of his penis, and Thornburg assured her that it would fit inside her and that he would use lubrication.

Two days later, Thornburg sent a video of an adult male having sex with a teenage girl so JMK could see "what it's like for a young girl to have sex." He told JMK that the girl in the video was probably 14 or 15, and that he "wished it was [us]." Thornburg then sent JMK an image of child pornography and told her that he believed that the girl in the image was younger than JMK. He said that the girl in the image was too young for his taste and that he preferred JMK's age or older.

Thornburg told JMK, graphically, of his strong desire to have sex with her but stated that she would have to want to have sex with him as well. Thornburg told JMK that he would teach her how to perform oral sex and described the instructions in graphic detail.

As the conversations continued, Thornburg asked JMK, "[s]o after showing you the videos, how does that make you feel about sex?" Thornburg asked JMK to send him nude photos of herself, but JMK claimed that she could not. Thornburg told JMK that he would love to have photos or a video of their first time having sex. [*7]

Thornburg then sent JMK another pornographic video of oral sex and asked if he could do that to her. Throughout their conversations, Thornburg repeatedly referred to the fact that he was old enough to be JMK's dad and referred to himself as her "daddy." Thornburg stated "I can't wait for you to say [daddy] while I'm inside you," and he then sent JMK a video showing an adult male engaged in a sex act with a child around 10 years old. He told JMK that he wanted to perform the same act with her as was depicted in the video. Thornburg told JMK that he was sending her the videos because he wanted her to get an idea of what might happen.

Thornburg then sent JMK three more videos, one showing two women engaged in a sex act, one showing a child performing a sex act on an adult male, and one showing a woman performing a sex act on a male. Thornburg stated that JMK could "practice" on him all she wanted and asked if she promised to practice on him. Thornburg said that he would be there soon and that JMK was "going to show daddy [her] pussy." He later stated "I know you're very curious about sex, and I'd be very glad to teach you about it like a daddy should be." Thornburg then sent JMK two videos depicting three people engaging in sex acts and afterward discussed having sex with JMK and another girl at the same time.

Thornburg stated that he wanted to be with JMK even if her mother was home, and JMK said that her mother would not approve and that Thornburg would *8 end up in 8 jail. He replied, "I know society would look down upon it, but I don't care what society thinks. I care about what you think. He stated that he liked JMK's age and that he "get[s] to be [her] naughty daddy. . . . And fuck [her] naughty little princess's pussy."

Thornburg asked JMK whether she was really going to let him do what he wanted sexually. JMK said yes, and then Thornburg sent her a video of a woman bound with her legs and arms spread apart and engaged in a sex act with a machine or foreign object, explaining that it was part of a master/submissive lifestyle, and asked JMK what she thought. Thornburg also asked if JMK knew what bestiality was, and he sent her a video of a woman receiving oral sex from a dog.

Thornburg and JMK began discussing him travelling to Florida to have sex with her. Thornburg explained details such as waiting for JMK at the gate of her apartment complex, what JMK would be wearing, and what time JMK's mother would leave. He also explained how he planned to have sex with JMK when he arrived. He then sent JMK another pornographic video, telling her that the girl appeared to be about her age.

Thornburg never met with JMK as discussed. After Agent Garcia determined that the
Kik user was Thornburg, law enforcement obtained warrants to *9 search his residence 9
and arrest him. Thornburg was arrested and a search warrant was executed at his
residence in Mississippi on November 18, 2015.

# II. PROCEDURAL HISTORY

## A. Indictment

In a second superseding indictment, a federal grand jury indicted Thornburg with: (1)
attempting to knowingly induce or entice a minor to engage in sexual activity, in
violation of 18 U.S.C. § 2422(b) (Count 1); (2) attempting to transfer obscene material
to a minor under 16 years of age, in violation of 18 U.S.C. § 1470 (Count 2); (3)
committing a felony offense involving a minor while being required to register as a sex
offender, in violation of 18 U.S.C. § 2260A (Count 3); and (4) transporting child
pornography, in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1) (Count 4).[1]

## B. Trial

The district court held a two-day bench trial. Following the trial, the district court
determined that the government had proven each element of all four remaining counts
and found Thornburg guilty. *10                                                    10

## C. Presentence Investigation Report

Thornburg's presentence investigation report ("PSI") grouped Counts 1 and 2
(attempting to entice a minor to engage in sexual activity and attempting to transfer
obscene material to a minor under 16) into a single group and, pursuant to U.S.S.G. §
2G1.3, assigned a base offense level of 28. The PSI added two levels because the offense
involved the use of a computer or an interactive computer service to entice a minor to
engage in prohibited sexual conduct, pursuant to U.S.S.G. § 2G1.3(b)(3), which resulted
in an adjusted offense level of 30 for the first group.

Count 4 (transporting child pornography) was placed by itself into a second group and,
pursuant to U.S.S.G. § 2G2.2(a)(2), assigned a base offense level of 22. The PSI applied
several specific offense characteristics to the second group, including a two-level
enhancement because the offense involved the use of a computer for the possession,

transmission, receipt, or distribution of child pornography, pursuant to § 2G2.2(b)(6). After applying all of the enhancements, Thornburg's adjusted offense level for the second group was 47. Pursuant to U.S.S.G. § 3D1.4, Thornburg's combined adjusted offense level was 47, which was also his total offense level. \*11                                    11

The PSI also noted that, pursuant to U.S.S.G. § 2A3.6(b), Count 3 (committing a felony offense involving a minor while being required to register as a sex offender) had a mandatory ten-year term of imprisonment, to run consecutively to any other sentence imposed.

Turning to Thornburg's criminal history, the PSI reported that he had Illinois convictions for indecent solicitation of a child/aggravated criminal sexual abuse and unlawful possession of child pornography in 2004 and 2009, respectively.[2] Thornburg's criminal history score was seven, which placed him in a criminal history category of IV. Because Thornburg was a repeat and dangerous sex offender against minors, his criminal history category was increased to V, pursuant to U.S.S.G. § 4B1.5. With a total offense level of 47 and a criminal history category of V, Thornburg's advisory guideline range was life imprisonment.

## D. Objections to PSI

Thornburg made several objections to the PSI, including an objection to all of the specific offense characteristics applied to Counts 1, 2, and 4. He argued that \*12 the          12 specific offense characteristics were inherent to his crimes of conviction, and, thus, were not unique and could lead to unreasonable sentences.

## E. Sentencing

At sentencing, Thornburg reiterated his objections. In particular, Thornburg objected to the application of an enhancement for computer use, pursuant to § 2G2.2(b)(6), arguing that the use of a cell phone or computer should not trigger an enhancement because such devices are used in almost every child pornography case. Overruling Thornburg's objection, the district court concluded that the computer enhancement was called for in the Guidelines, but agreed with Thornburg's reasoning and stated that it would take his computer enhancement arguments into consideration when making a variance to his sentence.

The district court adopted the PSI's facts and guideline calculations and noted that the advisory guideline range was life imprisonment. After hearing from both parties, the district court imposed a total sentence of 336 months' imprisonment, consisting of 216 months on each of Counts 1 and 4 and 120 months on Count 2, to run concurrently, and 120 months on Count 3, to run consecutively to all other counts, which represented a downward variance from the advisory guideline range of life imprisonment.

## III. SUFFICIENCY OF THE EVIDENCE *13                13

On appeal, Thornburg argues that the evidence was insufficient to support his Count 1 conviction for attempting to induce or entice a minor to engage in sexual activity under 18 U.S.C. § 2422(b).[3] Thornburg contends that he did not take a substantial step toward enticing a minor to engage in a sex act because he never talked to the person over the phone, but rather, communicated with her through only electronic means. Also, he argues that one of his chat messages demonstrates that he was willing to maintain a non-sexual relationship with the 13-year-old girl, showing that he did not intend to entice her to engage in a sex act.

Section 2422(b) criminalizes both the completed offense of enticing a child, and an attempt to commit the offense, as follows:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b) (emphasis added).

A defendant may be convicted of an attempt under § 2422(b) based on conduct directed toward a fictitious minor. United States v. Yost, 479 F.3d 815, *14 819 & n.2 (11th Cir.   14 2007). A finding that a defendant committed the crime of attempt requires proof that the defendant: (1) had the required intent to commit the underlying charged crime; and (2) took actions that constituted a "substantial step" toward the commission of the crime. Id. at 819.

To prove the intent element of a § 2422(b) offense, the government must show that the "defendant intended to cause assent on the part of the minor, not that [the defendant] acted with the specific intent to engage in sexual activity." United States v. Lee, 603 F.3d 904, 914 (11th Cir. 2010) (quotation marks omitted). It is the persuasion, inducement, enticement, or coercion of the minor, rather than the sex act itself, that is prohibited by the statute. United States v. Murrell, 368 F.3d 1283, 1286 (11th Cir. 2004) (involving § 2422(b)). An attempt to "stimulate or cause the minor to engage in sexual activity" fits the statutory definition of inducement. Id. at 1287.

To prove the conduct element of a § 2422(b) attempt, the government must prove that the defendant took a substantial step toward causing assent on the part of the minor, not necessarily toward causing actual sexual contact. Lee, 603 F.3d at 914. A defendant takes a substantial step toward completing a crime when his "objective acts mark his conduct as criminal and, as a whole, strongly corroborate the required culpability." Yost, 479 F.3d at 819 (quotation marks omitted). *15                                                          15

In determining whether the record supports a finding that the defendant took a substantial step in committing a § 2422(b) offense, we look at the totality of the defendant's conduct. Lee, 603 F.3d at 916. This is a fact-intensive analysis that does not categorically require any particular activity or course of conduct on the part of the defendant. United States v. Rothenberg, 610 F.3d 621, 627 (11th Cir. 2010).

This Court has explained that the "very nature of the underlying offense—persuading, inducing, or enticing engagement in unlawful sexual activity—necessarily contemplates oral or written communications as the principal if not the exclusive means of committing the offense." Id. (upholding sentencing enhancements based on § 2422(b)-type misconduct where the defendant engaged in online chats with adults who had influence over young children, and he graphically instructed the adults as to how to molest the children and persuade them to comply with the abuse).

For example, in Yost, this Court determined that the substantial step requirement was met where the defendant sent messages to the minor in which he asked her to perform sex acts on him, posted a picture of his genitalia online, spoke to the minor by phone, and arranged to meet her so they could engage in sexual *16 activity, even though he      16
did not arrive at the designated time and place. 479 F.3d at 819-20.

Similarly, in Lee, this Court determined that the substantial step requirement was met where the defendant, over the course of several months, discussed in graphic detail when and how he wanted to engage in sexual acts with the minors, sent graphic photographs to the minors, and promised the minors gifts. 603 F.3d at 915.

In both of these decisions, after weighing the totality of the defendants' actions, we concluded that communication alone constituted a substantial step. See Rothenberg, 610 F.3d at 626-27 (discussing Lee and Yost). We do "not require firm plans to travel where . . . the defendant, for several months, took other steps sufficient to achieve the end that is the object of the attempt." Lee, 603 F.3d at 915.

As an initial matter, Thornburg challenges the sufficiency of the evidence for only his Count 1 conviction under 18 U.S.C. § 2422(b). Although he references his guilt as a whole in the argument heading in his brief, he expressly discusses the elements of § 2422(b) only in his argument. Therefore, Thornburg has abandoned any sufficiency argument regarding the other three counts of his conviction. See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. *17 2003) (stating that issues or claims not clearly raised by a party on appeal are considered abandoned). 17

Here, the trial evidence, recounted above, sufficiently proves that Thornburg intended to induce or entice a minor to engage in sexual activity in violation of § 2422(b). See Yost, 479 F.3d at 819; Murrell, 368 F.3d at 1286. Throughout Thornburg's chat messages with JMK, he told her that he wanted to engage in various sex acts with her, but only if she wanted to, and explained to her what the sex acts would feel like. He encouraged her to send him nude photos of herself. Thornburg told her that he intended to teach her how to perform sex acts on him and asked her to promise that she would practice sex acts on him. Thornburg sent the purported 13-year-old girl pornographic videos and images as a means of teaching her various sex acts and discussed the videos and images with her to make her feel more comfortable about engaging in sex acts with him.

Also, considering the totality of Thornburg's conduct, the evidence amply supports that Thornburg took a substantial step toward causing the purported minor to assent to illicit sexual activity. See Lee, 603 F.3d at 915-16; Yost, 479 F.3d at 819-20. Communications alone are sufficient to support such a conviction. See Rothenberg, 610 F.3d at 627. And the communications here show that Thornburg attempted to induce the fictious 13-year-old girl into engaging in sex acts through *18 desensitizing her to 18

sexual imagery and conversation by sending and discussing pornographic images and videos, teaching her how to perform different sex acts, sending her a picture of his penis, encouraging her to send him nude photos, and planning to eventually meet her at her home in Florida to engage in sex acts with her.

Thornburg was not required to engage in any particular action or course of conduct to take a substantial step toward committing a § 2422(b) offense, so it is not dispositive that he did not speak with the purported minor over the phone. See id. Similarly, although Thornburg stated once that he would be willing to maintain a platonic relationship with the purported minor, this isolated statement is outweighed by the repeated graphic evidence in the record that "strongly corroborate[s] the required culpability" to support a conviction under § 2422(b). See Yost, 479 F.3d at 819. The evidence, construed in the light most favorable to the verdict, shows that Thornburg did not want to be the purported minor's friend, rather he intended to entice her to engage in numerous sex acts with him. See Farley, 607 F.3d at 1333. The trial evidence is more than sufficient to allow a reasonable trier of fact to find Thornburg guilty beyond a reasonable doubt. See id. We thus affirm Thornburg's conviction under § 2422(b).

## IV. COMPUTER USE ENHANCEMENT UNDER U.S.S.G. § 2G2.2(b)(6) *19

Thornburg also argues that the district court improperly applied a two-level enhancement under U.S.S.G. § 2G2.2(b)(6) for the use of a computer during the commission of the Count 4 offense, which was applied in calculating his offense level for his conviction for transporting child pornography in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1). He contends that the underlying base offense level already accounted for the use of a computer because virtually every child pornography case involves the use of a computer.[4]

"Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." De La Cruz Suarez, 601 F.3d at 1220 (quotation marks omitted). Further, "[d]ouble counting a factor during sentencing is permissible if the Sentencing Commission intended the result, and if the result is permissible because each section concerns conceptually separate notions related to sentencing." Id. (quotation marks omitted). We "presume[]

the Sentencing Commission intended to apply separate guideline sections cumulatively, unless specifically directed otherwise." United States v. Matos-Rodriguez, 188 F.3d 1300, 1310 (11th Cir. 1999). *20                                                                            20

The Guidelines provide for a two-level increase to a defendant's base offense level if the offense involves the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of material, or for accessing with intent to view material involving the sexual exploitation of a minor. U.S.S.G. § 2G2.2(b) (6).

We have determined that an enhancement under § 2G2.2(b)(6) does not amount to double counting when it is applied to a conviction under 18 U.S.C. § 2252(a)(1), which makes it unlawful to "knowingly transport[] or ship[] [child pornography] using any means or facility of interstate or foreign commerce." United States v. Little, 864 F.3d 1283, 1291 (11th Cir. 2017) (quotations omitted). The base offense level applicable to § 2252(a)(1), we explained, does not fully account for the use of a computer because that base offense level may be applied whether a defendant uses a computer or not. Id.

Under our prior precedent rule, we are bound by our prior panel decisions unless and until they are overruled by the Supreme Court or this Court en banc. United States v. Brown, 342 F.3d 1245, 1246 (11th Cir. 2003). Therefore, *21 Thornburg's argument         21
that the computer enhancement under § 2G2.2(b)(6) was improperly applied is foreclosed by our binding precedent. Id.[5]

In any event, we note that the district court's imposition of the computer enhancement under § 2G2.2(b)(6) was harmless. Thornburg's combined adjusted offense level was 47, which was also his total offense level. However, a total offense level of more than 43 is treated as an offense level of 43 pursuant to U.S.S.G. ch. 5, pt. A, cmt. n.2 (2016). Without the two-level enhancement, Thornburg's total adjusted offense level would have been 45, which the district court still would have been obligated to treat as 43. Therefore, any alleged error in the district court's application of § 2G2.2(b)(6) was harmless. See United States v. Sarras, 575 F.3d 1191, 1220 n.39 (11th Cir. 2009) (stating that the alleged error was harmless because total offense level would have remained the same). We affirm the district court's application of the enhancement under § 2G2.2(b) (6).

# V. CONCLUSION

For the foregoing reasons, we affirm Thornburg's four convictions and sentences.

**AFFIRMED.**

---

[1.] Thornburg was also charged with possessing child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (Count 5), but that count was dismissed without prejudice on the first day of trial.

[2.] Before trial, the government and Thornburg stipulated to the following facts, among others: (1) Thornburg is a convicted sex offender required to register in Mississippi; (2) he was convicted of indecent solicitation of a child in Illinois in 2004; (3) he was convicted of possession of child pornography in Illinois in 2009; and (4) he had admitted to law enforcement officers in 2006 that he previously had been arrested for attempting to meet an underage girl he had met on the internet.

[3.] We review de novo whether sufficient evidence supports a conviction, resolving all reasonable inferences in favor of the verdict. United States v. Farley, 607 F.3d 1294, 1333 (11th Cir. 2010). We will not reverse unless no reasonable trier of fact could find guilt beyond a reasonable doubt. Id.

[4.] We review de novo a claim of double counting under the Guidelines. United States v. De La Cruz Suarez, 601 F.3d 1202, 1220 (11th Cir. 2010).

[5.] Thornburg specifically challenges only the application of the computer enhancement to his Count 4 conviction under § 2252(a)(1), and, thus, he has abandoned any challenge against the other computer enhancement that was applied against him. See Jernigan, 341 F.3d at 1283 n.8.